364 So.2d 1091 (1978)
SEABOARD PLANNING CORPORATION et al.
v.
Edward P. POWELL et al.
No. 50581.
Supreme Court of Mississippi.
September 6, 1978.
Rehearing Denied December 13, 1978.
*1092 Crymes G. Pittman, Jackson, E. Clifton Hodge, Jr., University, for appellants.
Daniel, Coker, Horton, Bell & Dukes, John B. Clark, Jackson, Larry E. Clark, Taylorsville, Wise, Carter, Child, Steen & Caraway, Joseph P. Wise, Henderson Hall, Jackson, for appellees.
Before PATTERSON, BROOM and LEE, JJ.
BROOM, Justice, for the Court:
"Blue Sky" laws are the basis of the suit of complainants, Edward P. Powell and wife, Lessie S. Powell (Powells), seeking rescission and damages for misrepresentation and fraud in the sale of securities to *1093 them by the defendant William Howard Yates. Other defendants to the Powells' suit are: Seaboard Planning Corporation (Seaboard); Lexton-Ancira, Inc.; Lexton-Ancira Real Estate Income Partners, Ltd., 1973-B; Wade A. Myers, Fred L. Stallard, James R. Hoyt, Arthur E. Keller, Terry J. McGavern, and Kenneth T. Anderson (collectively "Lexton"); Peerless Insurance Company (surety for Yates and Seaboard); and the North River Insurance Company (surety for Lexton). Lexton-Ancira, Inc. and the other defendants (Yates and Seaboard excepted) respectively, herein designated "Lexton" unless otherwise indicated, are the corporate general partner and individual general partners of Lexton-Ancira Real Estate Income Partners, Ltd., 1973-B, a limited partnership. Trial in the Chancery Court of Hinds County, First Judicial District, resulted in a decree awarding the Powells $20,000 damages. Yates and Seaboard, against whom the decree was entered, appealed, and the Powells cross-appealed that part of the decree which denied them attorneys' fees and also denied them any relief whatever as against Lexton. We affirm the $20,000 money decree.
Chief issues are: (1) Were the Powells defrauded and, if so, should Lexton be held liable along with Yates and Seaboard? (2) Are the Powells entitled to attorneys' fees? Also argued is the two year statute of limitations. Yates was a self-employed security salesman and tax practitioner in Taylorsville, Mississippi, where he prepared tax returns for clients, including the Powells. In 1973 he became a qualified and registered security agent, certified by the secretary of state. Yates learned that the Powells, with limited education, sold their farm (which he knew was their only substantial asset) for approximately $70,000. When the seventy-seven-year-old Mr. Powell (Mrs. Powell was sixty-eight) discussed with Yates the matter of buying bonds, Yates discouraged him from buying bonds and called one Verilli (of Seaboard) to recommend an investment for Mr. Powell. Verilli put Yates in contact with McGavern, Vice-President of Lexton-Ancira, Inc., and general partner of Lexton-Ancira Real Estate Income Partners, Ltd. Lexton-Ancira Real Estate Income Partners, Ltd. is a limited partnership established to obtain current cash flow and tax advantages for the limited partners as well as capital growth through debt reduction and appreciation in real estate values which was accomplished by investing in real estate. The promoters sell limited partnership units (which Yates sold the Powells) to persons in higher federal income tax brackets, and by taking advantage of the depreciation provisions of the federal revenue statutes and regulations, produce considerable tax savings. Not sued were the limited partners: participants only in the profits and losses of the enterprise. Their liability is limited to the extent of their investment in the partnership, and they have no control over the actions of the partnership which the general partners manage. Persons in low income tax brackets generally do not profit from this type partnership.
McGavern sent Yates a prospectus, and after Yates had given it a cursory examination he drove to the Powells' house on December 21, 1973. Yates told the Powells that he recommended this investment, and that this was a correct vehicle if Mr. Powell needed his money immediately. He also told them that the company intended to pay eight percent interest. During this approximately one hour interview, the Powells did not read the prospectus, and Yates did not discuss the entire prospectus with them. Yates succeeded in selling them forty units of the limited partnership for which Powell wrote Yates a $20,000 check.
Yates knew that the year of the sale was the only year that Mr. Powell had anything to sell to create any substantial tax liability, and that in the next year Mr. Powell, in all likelihood, was going to be back in a low income tax bracket, but did not explain this to them. Mr. Powell, a farmer most of his life, quit farming in 1965 because of a hip operation, and sold his farm because he was unable to take care of a large acreage. He had never owned corporate stock and did not know what a prospectus or a mutual fund order was. Mr. Powell had only a *1094 sixth grade education, and was totally unfamiliar with real estate investment trusts or limited partnerships.
The Powells received $400 checks representing eight percent interest on their investment the first two quarters of 1974, but the third quarterly dividend check was only $200 instead of $400. Mr. Powell complained to Yates in October 1974, and Yates made reassuring statements to Mr. Powell at that time. At the end of 1974, Powell received no check at all from Lexton, and came back to Yates to question him. When he did not get a satisfactory answer from Yates, he retained a lawyer and filed suit. Yates had written Lexton regarding liquidation of the Powells' investment but was told that the securities had no established market and no cash-in value.
WAS YATES' MISREPRESENTATION OF MATERIAL FACTS SUFFICIENT TO CONSTITUTE FRAUD, MAKING HIM AND SEABOARD LIABLE? To satisfy the general requirements of legal fraud, the proof must show, among other facts, that the party charged made false representations knowingly, or unknowingly under such circumstances that he ought to have known they were false whether he did or not. Scienter in a literal sense is not an essential ingredient of actionable fraud where, as here, Yates "should have known" his representations were false. Mayfield Motor Co., Inc. v. Parker, 222 Miss. 152, 159, 75 So.2d 435 (1954). There is no question that Yates was the agent of Seaboard and acted as such.
There is in the record testimony to the following: Yates never read the prospectus in full and failed to tell Powell that the investment involved a high degree of risk; Powell, though contradicted by Yates, testified that Yates promised him a guaranteed return of eight percent per annum, and that the investment could be cashed in at any time with a small discount. The record shows that when Powell asked Yates, "How can I get my money back? What can I do to get my money back?" Yates' answer was, "I told him this was a correct vehicle if he needed money immediately... ." Yates claimed that he left a prospectus with Powell but Powell denied this.
We hold that Yates (Seaboard's registered agent), under the evidence, was correctly found by the chancellor to be guilty of legal fraud under Miss. Code Ann. § 75-71-25 (1972) and under the common law. Therefore, he and Seaboard (whom he represented) were correctly held liable to the Powells.
IS THE POWELLS' CAUSE OF ACTION BARRED BY THE STATUTE OF LIMITATIONS? Miss. Code Ann. § 75-71-31 (1972) allows two years (within which to sue) after purchaser, by the exercise of ordinary care, should have discovered that such sale was made in violation of the chapter, or upon misrepresentation, and not thereafter.
The defendants claim that the statute started running at the time of delivery of the prospectus on December 21, 1973, more than two years prior to January 9, 1976, when suit was filed. Because of the relative unsophistication of the plaintiffs, the Powells argued (and the chancellor agreed) that their cause of action accrued when they did not receive the full $400 payment in October for the third quarter of 1974.
Assuming, however, that Yates did leave the prospectus with the Powells, would they, by ordinary care, have discovered Yates' misrepresentations? To start the running of § 75-71-31, there must be not only fraud but some event to put the Powells on notice. Here the Powells' lack of education was a factor in the success of the fraud. At the time the fraud was perpetrated upon the uneducated Powells, it cannot logically be held that they as reasonable persons should have known of the fraud from the very instant they fell for Yates' misrepresentations. The first indication that things were not as Yates had made them out to be was the receipt in October of $200 for the third quarter of 1974, which would place the filing of suit well within the statute. We think the evidence establishes that Yates knew or should have *1095 known that even if the Powells undertook to peruse the prospectus they would not be able to comprehend its contents. The very nature of fraud is such that it cannot be discovered until sometime after the fraudulent act is committed. Here, the Powells had no reason to suspect Yates or distrust his representations until such time as they were put on notice by the smaller payments or the absence of payments. On these facts, we hold that the statute did not begin to run until the Powells received the check for the third quarter of 1974. Accordingly, the suit, filed less than two years afterward, was not barred by the statute.
WAS THE CHANCELLOR IN ERROR WHEN SHE RULED THAT THE POWELLS WERE NOT ENTITLED TO RELIEF AGAINST ALL OF THE LEXTON DEFENDANTS, INCLUDING THE CORPORATE GENERAL PARTNER AND THE INDIVIDUAL GENERAL PARTNERS? Stated differently, should Lexton be jointly liable with Seaboard and Yates because of the actions of Yates within the purview of the ("Blue Sky") Mississippi Securities law? The Powells so argue; Yates and Seaboard contend that they committed no fraud but that, if they are to be held liable, Lexton should also be held liable.
The lower court found that Yates was the registered agent and representative for Seaboard but refused to find that Lexton was liable for the acts of the salesman, Yates. Noted by the chancellor was the fact that none of the Lexton defendants participated in the sale of the securities to the Powells.
The Powells contend that Yates acted for all the Lexton defendants, and that under First Mobile Home Corp. v. Little, 298 So.2d 676 (Miss. 1974), it is not "necessary that agency exist for an issuer to be liable for the misrepresentation of another." They say this is so because Miss. Code Ann. § 75-71-31(2) provides a right to recover from the "seller" which they assert is defined by First Mobile Home to include the issuer. § 75-71-31(2) does provide that:
Every sale or contract of sale of any security made in violation of any provision of this chapter shall be voidable at the election of the purchaser, who shall be entitled to recover from the seller in an action at law... . (Emphasis added).
For some reason, in enacting § 75-71-31 the legislature failed to define "seller." The Powells make the assertion that First Mobile Home holds an "issuer" of stock to be a "seller under the statute, and that regardless of whether agency exists," the Lexton defendants are liable. We do not construe First Mobile Home as authority to hold Lexton liable upon the facts presented here. Throughout that case the opinion alludes to participation (by those held liable) in the tort, inducement, knowledge, or misfeasance of some kind. Here we cannot say that the chancellor erred in finding upon the evidence that Lexton did not participate in the sale of the securities to the Powells, or in finding that Yates was not Lexton's agent. First Mobile Home did not hold that in every situation the term "seller" includes any link in the chain of the selling process, but points out that Brown v. Cole, 155 Tex. 624, 291 S.W.2d 704 (1956)[1] so held. We note that the opinion in First Mobile Home referred to Brown and two other cases, and then imposed liability upon the corporation because "the sale of stock was without certificate of authority in violation" of § 75-71-31.
To apply First Mobile Home as argued here would tend to make all issuers insurers by holding "agent" to include anyone in or remotely having connection with the chain of distribution of securities. When she refused to impose liability on the Lexton defendants, the following evidence was before the chancellor. Yates testified that McGavern (of Lexton) did not have anything to do with the sale other than explain the *1096 nature of the offering. McGavern testified without contradiction that he did not know that Yates had the Powells in mind as his customer. Yates was not employed or paid by Lexton but received his commission from Seaboard. Nothing in the record indicates that the issuer (Lexton) either controlled or had the power to control Yates, the agent of the broker-dealer, Seaboard. Neither does any evidence suggest nor do the Powells charge that the issuer had knowledge of any of Yates' misrepresentations. Another feature of this case distinguishing it from First Mobile Home is that there the misrepresentations charged originated as an offer of the corporation made by its president and subsequently passed on to the stock purchasers, which is not true here. Yates' uncontradicted testimony was that he was not employed by the issuer, but by the broker-dealer (Seaboard), the source of his authority.
Upon testimony presented to her, the chancellor correctly held that Lexton (including all the partners therein) did not participate in the sale of the security to the Powells or induce the Powells to make the purchase. Absent either a principal and agent relationship or any actual participation in wrongdoing on the part of Lexton, the chancellor correctly refused to hold Lexton liable on authority of First Mobile Home. We conclude that the lower court properly refused to hold Lexton jointly liable with Seaboard and Yates based on any theory of agency or any statute cited.[2] Our ruling in no way reaches (and is without prejudice to) any cause of action or claim Yates and Seaboard may possibly have against Lexton related to the funds which Yates induced the Powells to pay out.
SHOULD THE CHANCELLOR HAVE MADE AN AWARD OF ATTORNEYS' FEES TO THE POWELLS? We think it clear that Miss. Code Ann. § 75-71-25 (1972), makes the award of attorneys' fees appropriate in this case. The chancellor found that Seaboard was employed by Lexton-Ancira to sell units of limited partnership interests and that Yates was Seaboard's registered agent. On the facts as shown by the record and found by the chancellor,[3] attorneys' fees are allowable under § 75-71-25, which provides for relief where any investment company or proposed investment company "by the officers, agents, employees or promoters" induces a purchase such as was made here by the Powells because of Yates' misrepresentation of material facts.
As to the amount of attorneys' fees to be awarded the Powells, the record as made can hardly be said to be adequate. The chancellor upon meager proof merely ruled that such fees were not allowable in this case, and made no determination as to what would constitute a reasonable and proper award, if granted. There were before her certain itemized statements of attorneys, but the proof as to whether the listed items charged were reasonable and proper was skimpy at best. Upon the record, justice will be better served by remand for the sole purpose of making a determination of the proper amount of attorneys' fees. The lower court will grant the proper parties an opportunity to present proof regarding the amount of attorneys' fees and fix the amount accordingly. Johnson v. Howard, 167 Miss. 475, 141 So. 573 (1932). Attorneys' fees as then awarded shall relate to both trial and appeal.
DOES MISS. CODE ANN. § 75-71-25 (1972) LIMIT THE AMOUNT OF THE *1097 POWELLS' RECOVERY TO THE AMOUNT OF THE BOND? The statute is clear that it limits only the recovery against the surety to the amount of the bond but makes no such limitation as against other defendants.
We deem it necessary to make only brief mention of the argument of the Powells that the prospectus which they finally received was not in conformance with the rules promulgated by the secretary of state's office. On that basis, they assert (as an additional ground) that they are entitled to recovery. We have already held that they are entitled to recovery as against the defendants Yates and Seaboard. In this regard we note that the secretary of state approved the prospectus, and we find no defects therein of such a nature as to constitute fraud or its equivalent, and thereby make Lexton liable.
We hold that the chancellor correctly found against Yates and Seaboard, and her decree against them for $20,000 plus interest will be affirmed.[4] In decreeing that the Lexton defendants were not liable, the chancellor will also be affirmed. Remand is ordered for the sole purpose of fixing the amount of attorneys' fees to be awarded the Powells as against Yates and Seaboard. The decree against Peerless Insurance Company in the amount of $5,000 will be affirmed, and the amount of $5,000, when paid by the surety, will be credited toward the decree against Yates and Seaboard. Court costs will be assessed against all of the defendants or parties against whom the Powells are granted relief.
AFFIRMED IN PART, AND REMANDED FOR FIXING AMOUNT OF ATTORNEYS' FEES.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and COFER, JJ., concur.
NOTES
[1] Since Brown v. Cole was decided, the Texas Legislature amended its "Blue Sky" laws to specifically limit the category of persons besides those immediately involved in such sales to "control persons" defined as those who directly or indirectly control a seller, buyer, or issuer of a security.
[2] Section D(5) of the Secretary of State's Guidelines on LIMITED PARTNERSHIPS provides: "The general partners ... must take the proper steps to determine whether ... the investor meets the criteria set out in these policies." This guideline is not relied upon specifically by either party nor briefed and, therefore, is not an issue. Neither is there any argument made as to how much authority or discretion the legislature may delegate to the Secretary of State in promulgating policies, regulations, etc. This court recently addressed the matter of delegation by the legislature to an administrative agency of authority to define crimes. State v. Russell, 358 So.2d 409 (Miss. 1978).
[3] No part of the record has come to our attention indicating that the chancellor was requested to make a finding on a specific factual issue.
[4] The decree appealed from properly credits Yates and Seaboard with the $1,000 which the Powells received on the security units Yates sold them.