474 So.2d 608 (1985)
Gary Curtis WALKER
v.
Sharon Dawn Walker LUCKEY.
No. 55962.
Supreme Court of Mississippi.
August 7, 1985.
*609 L.C. James, Jackson, Harris Sullivan, Danny Welch, Mendenhall, for appellant.
Aleita M. Sullivan, Mendenhall, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
DAN M. LEE, Justice, for the court:
This is what we perceive to be a case of first impression under Uniform Child Custody Jurisdiction Act (UCCJA) passed by the Legislature of the State of Mississippi and which became effective on July 1, 1982. The best intentions of loving parents that have caused a seven-year-old child, Jeremy Walker, to become "Interstate Jeremy" are the subject of this unfortunate legal battle. It would require the wisdom of Solomon and the patience of Job to solve this age old problem. Possessed with a dearth of both, an eye on a stable environment, the best interest of Jeremy, and the deepest empathy for all, we proceed.

THE FACTS
Gary Walker and Sharon Dawn Walker were married on May 10, 1974, in Simpson County, Mississippi. Their only child, Jeremy Clay Walker, was born in May, 1976. The parties were divorced in Simpson County in April, 1979. The divorce was based on irreconcilable differences, and the parties agreed on the following custody arrangement: Mrs. Luckey was to have permanent custody of Jeremy, with Mr. Walker exercising visitation rights on weekends, Wednesday evenings, one month during the summer and alternating Christmas and Thanksgiving holidays.
After the divorce, Mr. Walker, who is in the construction business, moved to Jackson where he lived until March, 1981, when he was transferred to Orlando, Florida. Walker lived there for approximately two years, and at the time this action was brought, had been living in Titusville, Florida, for approximately two months.
Mrs. Luckey, following the divorce, moved to Biloxi, Mississippi, in May, 1979. From May, 1979, until the time that she brought this action, in August, 1983, Mrs. Luckey moved eleven times, married Bobby Outzen, divorced him, and married Robert Luckey.
According to the record in this case, during the time immediately following the divorce of the parties, Jeremy spent time with both of his parents. Although he was in the primary custody of his mother, he often visited his father. In September, 1981, Mrs. Luckey was having serious problems in her marriage with Mr. Outzen. She was also having serious financial problems, and she contacted Mr. Walker to ask him to take Jeremy. According to Mrs. Luckey, Jeremy was to stay with his father until she got on her feet. According to Mr. Walker, the understanding was that he would assume primary care for Jeremy.
Mr. Walker took Jeremy to Florida and enrolled him in kindergarden. With the exception of his Christmas vacation, Jeremy remained with his father until June, 1982. In May, 1982, Mr. Walker filed a petition in Brevard County to modify the original divorce decree. He sought permanent primary custody of Jeremy Walker. Mrs. Luckey suggested one change in the modification, and signed the response and waiver. According to Mrs. Luckey, she only signed the papers after being told that Jeremy would not be sent to her for the summer if she did not sign them. However, she did admit that she had the advice of an attorney before signing the papers.
The Circuit Court of Brevard County found that it had jurisdiction over the subject matter of the case, and entered an order on August 13, 1982, giving primary custody of Jeremy to his father. Mr. Walker was to have custody of Jeremy during the school year, with Mrs. Luckey *610 having him over the holidays and the summer. Pursuant to the terms of the order, Mrs. Luckey returned Jeremy to his father in August, 1982, for him to be taken to Florida. Jeremy spent the next Christmas holiday with his mother and she subsequently returned him to his father in Florida. At the end of the school year, in June, 1983, Jeremy returned again to Mississippi to visit his mother for the summer. However, at the end of the summer, Mrs. Luckey informed Mr. Walker that she had spoken with an attorney, and intended not to return Jeremy. She filed her petition to void the Florida order on August 17, 1983.
While neither parent had alleged that the other was unfit, at trial, each of them offered evidence tending to show that the other was unstable. Both parties offered several witnesses to corroborate the quality of their home life and the quality of their relationship with their son. The record indicated that Jeremy enjoys a close and loving relationship with both of his parents. After Mr. Walker and Mrs. Luckey had testified, the court made the statement that "I think both of you love him. I don't think that  I wouldn't, by letting either one of you have the child, I wouldn't give him to someone who does not love the child, because I think both of you love him."
The court issued a temporary order granting custody of Jeremy to Mrs. Luckey. The final order, issued June 12, 1984, made a finding that Mrs. Luckey only signed the waiver in the Florida proceedings in order to get custody of Jeremy for the summer. The court held that the Circuit Court of Brevard County had no jurisdiction to enter its order because Mrs. Luckey agreed to it only under a form of duress. It also found that the best interest of the child would be served by giving custody to the mother, particularly in light of its finding that Mississippi was the home state of the child. The court required a $3,000 bond of Mr. Walker, conditioned on his returning Jeremy to Mrs. Luckey at the end of each of his visitation periods. It further ruled that each party pay its own attorneys fees, and that Gary Walker pay all court costs.
The appellant's only assignment of error is:
The chancellor erred in assuming and exercising jurisdiction of this cause without regard for the operation of the Uniform Child Custody Jurisdiction Act; failing to award fees and expenses.
The primary issue in this case is whether the decree issued by the Florida court, giving custody of Jeremy to his father, was valid. We hold that it was, and, thus, reverse the decision of the chancellor below.
Gary Walker filed his petition for modification in Florida in June, 1982. At that time, Florida had adopted the Uniform Child Custody Jurisdiction Act (UCCJA). The UCCJA allowed Florida to assume jurisdiction over the child, as long as the child had lived in the state, with a parent, for at least six months, and as long as no other state asserted its jurisdiction over the child. Fla. Stat. §§ 61.1306, 61.1308 (Supp. 1984). When Gary Walker filed his petition, Jeremy had been living with him, at the request of Mrs. Luckey, for over nine months. Walker fully complied with all the requirements of the Florida courts in filing his petition, including the filing of an affidavit providing his address, and the address of the child, for the last five years.
More importantly, Walker notified his ex-wife of the petition approximately one month before he filed it. Mrs. Luckey admitted in her testimony that she received a copy of the petition and that she talked to an attorney about it. The response to the petition, which she signed and returned to Walker, submitted herself to the jurisdiction of the Florida court and consented to the entry of an order there. The response to petition for modification and waiver of notice and hearing, signed and filed by appellee, is as follows:
RESPONSE TO PETITION FOR MODIFICATION AND WAIVER OF NOTICE AND HEARING
The Respondent, SHARON DAWN WALKER, files this Response to Petition *611 to Modification filed by the Petitioner, GARY CURTIS WALKER, and would state:
1. That the Petitioner submits to the jurisdiction of the Circuit Court in and for Brevard County, Florida for purposes of modification of the Final Decree previously entered by the Chancery Court in and for Simpson County, Mississippi and waives any and all Notice of said Petition and all hearings scheduled thereon.
2. The Respondent has received a copy of the Petition for Modification signed by the Petitioner on the 1st day of May, 1982 and has been given a reasonable opportunity to consult with independent legal counsel concerning her rights thereunder.
3. The Respondent is in agreement with the allegations contained in said Petition for Modification and consents to the entry of an Order by the Circuit Court in and for Brevard County, Florida as requested by the Petitioner in his Petition for Modification aforesaid.
WHEREFORE, the Respondent respectfully requests this honorable Court to take jurisdiction of the subject matter and the parties, and to enter an Order according to the terms and conditions set forth in the Petitioner's Petition for Modification without any further notice to her.
 /s/Sharon Dawn Keary
 Sharon Dawn Walker, n/k/a Sharon
Dawn Keary
 Respondent
 /s/Sharon Dawn Walker
 Sharon Dawn Walker
 Witness: /s/ Land E. (illegible).
 STATE OF MISSISSIPPI
 COUNTY OF JACKSON
I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State and County aforesaid to take acknowledgments, personally appeared SHARON DAWN WALKER, to me known to be the person described in and who executed the foregoing instrument and she acknowledged before me that she executed the same.
WITNESS my hand and official seal in the State and County last aforesaid this 31st day of May, 1962.
 /s/ Judith L. Wright
 Notary Public
 My Commission Expires
 Sept. 26, 1985.
 (SEAL)
 (emphasis supplied)
We note here that if Mrs. Luckey had any reservations about the validity of Florida's jurisdiction over her child, she could have refused to sign the waiver and notify the Florida court of her allegation of Mississippi's continuing jurisdiction. For reasons known best to herself, she declined to do this and allowed Florida to assume jurisdiction over Jeremy.
Furthermore, Mrs. Luckey apparently recognized the force and effect of the decree for nearly a year afterward, returning Jeremy to the custody of his father, pursuant to the terms of the decree, after both his summer 1982, and Christmas, 1982, visitations. However, in the summer of 1983, Mrs. Luckey, after acquiring a new husband and a re-awakened interest in domesticity, decided to ignore the terms of the Florida decree to which she had consented and in which she had acquiesced for over a year. She retained Jeremy in violation of the decree and sought to re-invoke the jurisdiction of the Mississippi courts over Jeremy.
Mississippi has enacted the UCCJA (§§ 93-23-1  93-23-47, Miss. Code Ann. (Supp. 1984)), and it became effective here on July 1, 1982. The act was designed to prevent the very behavior with which we have been confronted here; namely, the "Interstate Child" phenomenon where a custody decree is entered in one state, and a parent removes the child to another state, to have custody modified. In this case, Jeremy who, at the initial request of his mother stayed in Mississippi, later moved to Florida with his father, and was protected by a valid Florida decree, was abruptly moved back to Mississippi from Florida in violation of a court order. This Court will *612 not countenance the behavior of a parent who submits herself to the jurisdiction of another state when it suits her, then appeals to the courts of Mississippi to assume jurisdiction when that suits her better.
Section 93-23-15, Miss. Code Ann. (Supp. 1984) provides that:
(2) Unless required in the interest of a child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody.
We believe that Mrs. Luckey's wrongful detention of Jeremy in Mississippi after agreeing to the Florida modification decree prevented the Mississippi court from assuming jurisdiction over this child. If the UCCJA is to have any teeth at all, we must permit it to work in the manner in which it was intended  to give "Interstate Jeremy," and other children in his situation, some sense of permanence and stability in their homes. For this reason, we reverse the chancellor's finding that the Florida decree was void, and order compliance with its terms instanter.
As to Mr. Walker's claim for attorneys fees, § 93-23-15(3) seems to allow for such an award in this type of case. However, Walker and his attorneys failed to put on any proof as to reasonable fees in this case. Seaboard Planning Corp. v. Powell, 364 So.2d 1091 (Miss. 1978). Since this case will not be remanded for further proceedings, we affirm the chancellor's judgment ordering each party to pay his own attorneys fees.
REVERSED AND RENDERED IN PART. AFFIRMED AS TO DENIAL OF ATTORNEYS FEES.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON and ANDERSON, JJ., concur.
SULLIVAN, J., not participating.