621 So.2d 661 (1993)
Teresa M. Ellis JOHNSON,
v.
James C. ELLIS, III.
No. 92-CA-492.
Supreme Court of Mississippi.
July 15, 1993.
Lydia Quarles, McAlpin & Quarles, Starkville, for appellant.
Ben F. Hilbun, Jr., Starkville, for appellee.
Before ROY NOBLE LEE, P.J., and PITTMAN and ROBERTS, JJ.
ROBERTS, Justice, for the Court:
In February 1992, Teresa Ellis Johnson filed a complaint in the Oktibbeha County Chancery Court for modification of a child custody determination, part of a divorce decree rendered four years prior by the Chancery Court of Mississippi County, Arkansas. The complaint also sought an adjudication of contempt for delinquency in payment of child support. Johnson contended that jurisdiction was properly in the Oktibbeha court under the Uniform Child Custody Jurisdiction Act (UCCJA). The Chancellor held that Arkansas chancery court was the proper forum to hear the cause, and dismissed Johnson's complaint. Johnson appealed. Finding that the Chancellor did not err in declining jurisdiction, we affirm.

A

FACTS AND PROCEDURAL HISTORY
James Ellis and Teresa Ellis Johnson were married on June 6, 1969 in Blythville, Arkansas. Four children were born of this union, two of which are the subject of this litigation: Joy Ellis, age 10, and James Clinton "Jay" Ellis IV, age 8.
The couple separated in July 1987, and Teresa was granted a divorce on March 7, 1988 in the Chancery Court for the Chickasawba *662 District of Mississippi County, Arkansas. Teresa was awarded custody of Joy, then age 6, and Jay, then age 4. The decree provided for alternate weekend and holiday visitation rights by James. James was awarded custody of fifteen-year-old Tracy, with reasonable visitation rights by Teresa. The couple's oldest daughter was emancipated by marriage.
The decree also provided that James would pay $250.00 per month per child, a total of $500.00 monthly in child support. The monthly amount was subsequently reduced to $150.00 per child, a total of $300.00 per month.
Later that year, Teresa remarried and moved to Bowling Green, Ohio with her husband Dr. Gary Johnson.[1] James continued to live in Blythville, Arkansas, and a modification of the divorce decree allowed him holiday and summer visitation rights with Joy and Jay.
The Arkansas chancery court docket shows a steady stream of motions, hearings, and orders concerning the custody and care of the children, from three months after the divorce through October of 1991. James fell behind in his child support payments, owing amounts of up to $5500.00; judgments were entered against him by the chancery court in April 1989, April 1990, and January 1991.
Teresa and her family moved to Starkville, Mississippi in July 1991. On February 4, 1992, Teresa filed a complaint in the Oktibbeha County Chancery Court styled "Complaint for Modification of Child Custody Determination Pursuant to the Uniform Child Custody Jurisdiction Act and Complaint for Adjudication of Contempt." In the complaint, she alleged that "a material change of circumstances" had occurred, warranting a modification of James' visitation schedule with Joy and Jay. Specifically, she charged that the children had been subjected to improper sexual advances by their father during their visitation with him. The complaint alleged:
that this activity has recently been acknowledged by the children and confirmed by independent authority, and that during the most recent exercise of visitation by the defendant, over the Dr. Martin Luther King holiday in January 1992, both children were threatened and gripped with emotional, psychological and physical fear of imminent physical harm of the nature and kind previously experienced due to the fact that the defendant refused to allow the children to sleep in the home of their maternal grandmother, but demanding that they sleep in defendant's home, a place where they have indicated to plaintiff that they feel uncomfortable, thereby causing great distress to both children.
The complaint also charged that the living conditions at James' house were such that a modification of his visitation rights was warranted. Specifically, Teresa alleged that the house was "filthy," "filled with firearms" available to the children, "improperly supplied as to food and drink," and "frequented by individuals who allegedly personally indulge or participate" in drug trade. She also charged that the children were inadequately supervised during their visits, and that in their presence, James addressed their older sister (who lived with him) as "slut" and "whore," and physically abused her. The complaint further alleged that Joy and Jay were "materially affected behaviorally" by visits with their father, as manifested by their "acting out" upon their return. Teresa charged that James' inappropriate activity was caused by "physical, mental, and emotional trauma"; that he had sustained petit, grand mal, and psychomotor seizures, and that he had been diagnosed with epilepsy. She alleged that surgery and medication were ineffective in controlling the psychomotor seizures, which caused sexually aberrant and inappropriate behavior, sometimes directed at the children. Finally, Teresa alleged that due to the seizures, James lacked any memory of his behavior, and was not capable of dealing with the *663 issue of abuse. Teresa requested that the court modify James' visitation rights, such that supervised visits with the children would occur in her home, one weekend every three months. She also requested that the court order James to submit to psychological evaluation. Teresa claimed that the Oktibbeha County Chancery Court could assume jurisdiction of this custody matter under the Uniform Child Custody Jurisdiction Act (UCCJA), Miss. Code Ann. (1972) § 93-23-1, et seq. (Supp. 1992).
The second count of Teresa's complaint alleged that James owed $4,766.21 in child support, requested that the court adjudicate a delinquency in that amount, and further requested that the court require a bond or other security to guarantee payment for two years. Attorney's fees and costs were also requested. Jurisdiction over this matter was alleged to be proper under the Uniform Reciprocal Enforcement of Support Law, Miss. Code Ann. § 93-11-1, et seq.[2]
James filed a motion to dismiss under M.R.C.P. Rule 12(b)(1) and (6). The motion noted the continuing litigation over the welfare, custody and maintenance of the children in the Arkansas chancery court, and alleged that the Oktibbeha court did not have proper jurisdiction, because the Arkansas court was "a court of competent and continuing jurisdiction over the parties and subject matter of these proceedings." In a memorandum in support of his motion to dismiss, James charged that Teresa was "forum shopping," or trying to bring him to an inconvenient forum away from witnesses on his behalf.
A hearing on James' motion to dismiss was held in the Oktibbeha Chancery Court. The motion was granted by order dated May 4, 1992, which stated in part:
At the request of the Defendant, the Court conferred with the Honorable Howard Templeton, Chancellor in Jonesboro, Arkansas, and after conferring with Chancellor Templeton, it was the finding of the Court, reinforced by his conversation with Judge Templeton, that all the factual allegations which occurred herein occurred in the State of Arkansas and the Court was of the opinion that the Court of Mississippi County, Arkansas would be the proper forum for the trial of this matter.[3]
Chancellor Brand also ruled that visitation would be deferred for 45 days so as to allow the matter to be brought before the Arkansas chancery court.
Teresa appealed on May 11, 1992.

B

DISCUSSION OF ISSUE

DID THE CHANCELLOR MAKE A MISTAKE WHEN HE DECLINED JURISDICTION, DETERMINING THE PROPER FORUM FOR THIS CASE TO BE THE CHANCERY COURT OF MISSISSIPPI COUNTY, ARKANSAS, AND DISMISSED THE COMPLAINT?
Concerning her first count (request for modification of the visitation rights), Teresa argues that her complaint met all the procedural requirements necessary for jurisdiction under the UCCJA. In particular, she contends that under Miss. Code Ann. (1972) § 93-23-5 (Supp. 1992), a Mississippi court has jurisdiction to make or modify a custody determination if Mississippi is the "home state" of the child, and that this is the case with Joy and Jay. She contends that "(t)here is no reason why the Chancery Court of Oktibbeha County should not have exercised jurisdiction over these children." Concerning the second count (arrearage of child support), Teresa argues that Miss. Code Ann. (1972) § 93-11-65 (Supp. 1992) ("Custody and support of minor children; additional remedies") provides that a chancery court of the proper *664 county has jurisdiction to hear suits for the "custody, care, support and maintenance of minor children," proper county being defined as "the county where the child is actually residing, or in the county of the residence of the party who has actual custody." Because both she and the children reside in Oktibbeha County, Teresa argues, while the Arkansas court retains continuing jurisdiction to enforce its original decree, the Oktibbeha chancery court is also competent to adjudicate issues concerning support of the children.
James contends that the chancery court of Arkansas is the proper forum for consideration of Teresa's complaint, because the behavior alleged to justify modification of visitation rights would have occurred in Arkansas, and any witnesses to the alleged sexual offense would be found there. James further argues that this Court should defer to Chancellor Brand's decision that Arkansas was the more appropriate forum, particularly since the Arkansas chancellor agreed. James does not address the issue of the child support arrearage; presumably his argument is that Arkansas is the proper forum for consideration of both allegations in the complaint.

The UCCJA
Section 93-23-5 of the UCCJA sets out the circumstances under which a Mississippi Court may assume jurisdiction of a custody matter. It reads in part:
(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(a) This state (i) is the home state of the child at the time of commencement of the proceeding ...
"Modification decree" is defined as "a custody decree which modifies or replaces a prior decree, whether made by the court which rendered the prior decree or by another court." Miss. Code Ann. § 93-23-3(h). "Home state" is defined as "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six (6) consecutive months ..." Miss. Code Ann. (1972) § 93-23-3(f) (Supp. 1992).
However, a "home state" court is not obliged to assume jurisdiction over a custody matter if the chancellor determines that another court is a more appropriate forum. Section 93-23-13, "Inconvenient Forum," provides in part:
(1) A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
* * * * * *
(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, amongst others:
* * * * * *
(c) if substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state ...
(4) Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.
(5) If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceedings be promptly commenced in another named state ...
In short, these statutes provide that a chancellor may, but need not, assume jurisdiction of a custody matter concerning a resident child where another forum is available.
*665 Seemingly at odds with the above, § 93-23-27 of the UCCJA reads in part:
If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree, and (b) the court of this state has jurisdiction.
This section appears to contradict the previously cited portions of the UCCJA, in that it forbids the chancellor from assuming jurisdiction unless the original court no longer has it. That is, §§ 93-23-5 and 93-23-13 seem to envision concurrent jurisdiction by two state courts, while § 93-23-27 envisions mutually exclusive jurisdiction.

Concurrent Jurisdiction
This Court has interpreted the UCCJA as providing for concurrent jurisdiction, not mutually exclusive jurisdiction. Typically, the two states sharing concurrent jurisdiction will be the state which issued the original divorce or custody decree, and the state to which the custodial parent and children have moved.
In Matter of Marriage of Smith, 555 So.2d 73 (Miss. 1989), a couple divorced in 1981 in Madison County and custody of their two children was awarded to the mother, Janice Smith. She and the children moved to Alabama several years later. Shortly thereafter, the children's paternal grandmother filed suit in the Madison chancery court to modify the original divorce decree, on the grounds that Janice was morally unfit to have custody of the children. She obtained a judgment placing custody of the children with her. On appeal, Janice argued that Alabama, not Mississippi, was the proper forum to determine custody. This Court, citing Miss. Code Ann. § 93-13-5(1), held that the two states had concurrent jurisdiction:
The drafters of the UCCJA recognized that the language of the act could result in concurrent jurisdiction, as in this case, in which both Mississippi and Alabama have a strong interest in the children involved. A primary purpose of the UCCJA is that of avoiding jurisdictional conflict with other states "which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being." Uniform Child Custody Jurisdiction Act (U.L.A.) § 1.
Smith, 555 So.2d at 75 (Miss. 1989). See also Cooley v. Cooley, 574 So.2d 694, 697 (Miss. 1991) (concurrent jurisdiction of Mississippi and Louisiana over custody proceedings permissible under UCCJA).

Assuming or Declining Jurisdiction
We have established a three-step process for determining, under the UCCJA, whether a state should assume jurisdiction of a custody matter:
A court must first determine if it has authority, or jurisdiction, to act following the guidelines of § 93-23-5. If a court determines that it does not have jurisdiction the process stops there. However, if that hurdle is cleared, a determination is made as to which court is the more appropriate and convenient forum under the guidelines of § 93-23-13. A court may decline to exercise jurisdiction if it is not the most appropriate or convenient forum. If the court accepts jurisdiction as the more convenient forum, the court must determine if the action to be taken is foreclosed by an order or judgment of the other state court.
Stowers v. Humphrey, 576 So.2d 138, 140 (Miss. 1991), citing Hobbs v. Hobbs, 508 So.2d 677, 680 (Miss. 1987).
In Stowers v. Humphrey, the original divorce and custody decree between Susan Humphrey Stowers and Rex Stowers was entered in 1986 in the Pike County Chancery Court. That court retained jurisdiction to modify its order, even after Susan and two daughters moved to Alabama in 1987.[4] In 1989, Rex petitioned the Pike *666 County Chancery Court for a reduction in child support, and other modifications of the divorce decree. Around the same time, Susan filed suit in the chancery court in Alabama, where she and the girls lived, for termination or limitation of Rex's visitation rights. She also filed a motion in the Pike County Chancery Court to dismiss Rex's petition on the grounds that Alabama was the more appropriate and convenient forum. Noting that Susan and the girls had lived in Alabama for two and a half years, making it their "home state," the Pike County chancellor held that Mississippi did not have jurisdiction under the UCCJA to modify the divorce decree, and that Alabama was the more appropriate forum. On appeal, this Court held that the chancellor had incorrectly found that the Pike County court was without jurisdiction. Rather, while retaining continuing jurisdiction to modify the original divorce decree, the Pike county chancellor was allowed to decline jurisdiction where he found that Alabama was the "home state" of the girls, and a more appropriate forum. Citing § 93-23-13, we noted:
Allison and Alicia clearly have a "closer connection" to Alabama. They have lived in Alabama for 2 and 1/2 years. Also evidence concerning the effects of visitation with their father is more readily available in Alabama than in Mississippi. That being the case, the Mississippi court, even though it had jurisdiction, properly stayed the proceedings on the finding that Mississippi is an inconvenient forum and Alabama has the most appropriate forum.
Stowers v. Humphrey, 576 So.2d at 142. We have several times reaffirmed the principle that under the UCCJA, the chancery court may decline to exercise its continuing jurisdiction if it is determined there is a more convenient forum. See Jones v. Starr, 586 So.2d 788, 790 (Miss. 1991); Hobbs v. Hobbs, 508 So.2d 677 (Miss. 1987).
While the decision of whether to exercise or decline continuing jurisdiction is left to the chancellor, this Court has occasionally found error where a chancellor did not relinquish jurisdiction to another forum. In Siegel v. Alexander, 477 So.2d 1345 (Miss. 1985), Ferrell and Brenda Alexander were divorced in Neshoba County in 1979, with custody of their two children awarded to Brenda. Brenda was remarried to Sandy Siegal, and in 1982 moved with her husband and children to Texas. Learning that the Siegel's marriage was turbulent and violent, Ferrell filed a motion in the Neshoba court to modify the original judgment, seeking custody of the children on the grounds of substantial and adverse change in circumstances. Brenda filed a motion to dismiss, alleging lack of jurisdiction under the UCCJA, and objected to Mississippi as an inconvenient forum. The chancellor, holding that the UCCJA did not apply to this modification, awarded custody of the children to Ferrell. We reversed, holding that the UCCJA did apply, and that the chancellor should have declined jurisdiction:
The children in the case at bar had resided in Texas for a period of a year prior to initiation of this action and for two years prior to the date of the trial. Clearly, Texas is the home state of the children. Since practically all witnesses and all evidence of any substantial changes adversely affecting the children's future care, protection and training lie within the borders of Texas, it would be no more than reasonable to assume that it is the more appropriate forum. It would be in the best interest of the children to embrace the principles of the UCCJA and therefore relinquish jurisdiction to the Texas court, which is in the best position to accurately assess the circumstances of the children domiciled there.
Siegel v. Alexander, 477 So.2d at 1347 (Miss. 1985). See also Walker v. Luckey, 474 So.2d 608 (Miss. 1985).
This Court has not yet faced the jurisdictional question posed by the case at *667 bar. That is, we have not had occasion to review a chancellor's decision to decline jurisdiction, where Mississippi is the new "home state" of children involved in a custody dispute, and another state retains continuing jurisdiction over the parties by virtue of having entered the original decree.
Guidance is provided by Siegel v. Alexander and Stowers v. Humphrey, in that their discussion of whether the new "home state" or the originating state is the more appropriate forum focuses on the language of § 93-23-13(3). This section directs that the court may take into account "(i)f substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state."
Turning to the case at bar, we note as a preliminary matter that the Oktibbeha Chancery Court has jurisdiction under § 93-23-5(1)(a), as Mississippi was the "home state" of Joy and Jay at the time Teresa commenced this proceeding to modify the Arkansas decree. We also note that the Arkansas chancery court retains jurisdiction over custody matters even though Teresa and the girls now live in Mississippi. Next, we address the question of whether the chancellor properly held that Arkansas was the more appropriate forum, and declined jurisdiction. Under the language of § 93-23-13(3), it appears that some evidence relevant to Joy and Jay's welfare exists in Mississippi, while other evidence exists in Arkansas. The children are apparently enrolled in school in Mississippi; there can be found the "school authorities" that Teresa claims have reported "acting out" behavior by Joy and Jay. Any other persons who could testify about the children's behavior after their return from visits with their father would also be found in Mississippi. Of course, Teresa, the children, and their stepfather are in Mississippi.
On the other hand, Teresa's allegations concern James' behavior towards the children during visits to his home; such conduct would have occurred in Arkansas. Any witnesses to James' alleged behavior would most likely be found in Arkansas. In particular, the older daughter, whose testimony would probably be desirable, resides with James in Arkansas. Teresa's mother, the children's grandmother, lives "within walking distance" of James' house, in Arkansas. If Teresa's statements concerning James' history of seizures, epilepsy, surgery and medication are true, the medical records of his condition are probably in Arkansas. Finally, and most importantly, the chancery court which has heard six docket pages worth of motions, objections, responses, amendments and petitions concerning the parties, is in Arkansas.[5]
While an argument can be made that there exists in Mississippi sufficient evidence "concerning the child(ren)'s present or future care, protection, training and personal relationships" to justify the Oktibbeha chancery court assuming jurisdiction of the case, it appears that at least as much evidence exists in Arkansas. Therefore, while the chancellor in Mississippi, the children's new "home state," could have asserted jurisdiction under the UCCJA, he was not required to do so, where he found that Arkansas was the more appropriate forum. This Court will not disturb the findings of a chancellor unless manifestly wrong or clearly erroneous. Estate of Lyles, 615 So.2d 1186 (Miss. 1993); Lindsey v. Lindsey, 612 So.2d 376 (Miss. 1992); Faries v. Faries, 607 So.2d 1204 (Miss. 1992). We cannot say that the chancellor abused *668 his discretion in declining jurisdiction of this case. We affirm his finding that Arkansas is the proper forum, and his order dismissing Teresa's complaint.[6]
In conclusion, we note that the facts of this case presented a difficult and sensitive choice for the chancellor, and that his judgment conformed to both the letter and spirit of the Uniform Child Custody Jurisdiction Act.
AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE and SMITH, JJ., concur.
NOTES
[1] An order entered October 18, 1988 permitted Teresa to "Remove Children from State of Arkansas on Permanent Basis."
[2] Accompanying the complaint was a Motion for Temporary Relief, which requested the court to require that until the cause was heard, all visits by James with the children would occur in her house, in the presence of Teresa and her husband.
[3] Such conversation with the Arkansas chancellor is authorized by Miss. Code Ann. (1972) § 93-23-13(4) (Supp. 1992).
[4] This Court has held that a chancery court that enters the original decree has continuing jurisdiction to subsequently modify its custody order even after the parent and child have moved from the state. Bradshaw v. Bradshaw, 418 So.2d 64, 65 (Miss. 1982). Bradshaw preceded Mississippi's adoption of the UCCJA; however, subsequent cases interpreting the UCCJA's jurisdictional section do not reject continuing jurisdiction. See Siegel v. Alexander, 477 So.2d 1345 (Miss. 1985); Hobbs v. Hobbs, 508 So.2d 677 (Miss. 1987).
[5] The following sequence will give some indication of the chancellor's continuing involvement with this case since July of 1987:

9-8-88 Motion for Psychiatric and Mental Examination of the Defendant and Brief in Support Thereof filed
9-16-88 Petition for Change of Custody filed
9-16-88 Response to Motion for Psychiatric and Mental Examination of the Defendant filed
9-16-88 Defendant's Response to Motion for Continuance filed
9-21-88 Petition for Citation for Contempt filed
9-21-88 Response to Petition for Change of Custody filed
9-29-88 Order to Show Cause for Appearance on 10-26-88 for James Ellis filed
10-18-88 Order allowing Plaintiff to Remove Children from State of Arkansas on Permanent Basis filed
It is not evident from the record if James ever underwent the requested psychiatric exam.
[6] Because we find that the Arkansas Chancery Court is the proper forum to consider Teresa's Complaint for Modification of Child Custody Determination, it is not necessary to address separately her Complaint for Adjudication of Contempt. This, too, can be addressed by the Arkansas Chancery Court.