## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CA-01143-SCT

*JOEL WILLIAM HASSE, JR.*

*v.*

*BARBARA ANNE HASSE SHANE*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/23/96 |
| TRIAL JUDGE: | HON. PAT H. WATTS, JR. |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | G. CHARLES BORDIS, IV |
| ATTORNEY FOR APPELLEE: | WILLIAM T. REED |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | REVERSED AND REMANDED - 7/23/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/17/98 |

**BEFORE SULLIVAN, P.J., BANKS AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Joel and Barbara Hasse received a final judgement of divorce in the chancery court of Jackson County on February 7, 1995. Their child custody and visitation agreement reads in part as follows:

Husband and Wife agree that both parties are fit and proper persons and shall have joint care, custody and control of the two (2) aforesaid minor children of the parties, Mason Daniel Hasse and Stephanie Anne Hasse.

Husband and Wife are on active duty in the United States Navy. Accordingly, custody of the minor children shall be arranged as follows: The parent having orders to shore duty will have paramount custody and control during the period of said orders. The parent having sea duty orders will be allowed to exercise reasonable visitation with the children at his or her own expense, as and when practical, upon twenty-four (24) hours notice.

¶2. At the time of divorce, Barbara had shore duty orders and Joel had sea duty orders. Accordingly, Barbara retained custody of Mason and Stephanie, ages six and two years old respectively. Barbara thereafter separated herself from the Navy in August 1995 and moved to Maryland. The children joined her in October, 1995 after she obtained an apartment. Mason was enrolled in the Maryland

school system shortly after moving to Maryland.

¶3. Joel returned with shore leave to Mississippi in April, 1996. Barbara refused, however, to relinquish custody of the children. In response, he filed a complaint for contempt, modification or other relief on April 16, 1996. Barbara responded to Joel's complaint by filing a motion to dismiss for lack of jurisdiction on May 10, 1996.

¶4. Subsequent to filing her motion, Barbara voluntarily relinquished custody of the children to Joel and began paying child support. While in Joel's custody, the children resided at their home of several years prior to the divorce, were enrolled in St. Martin Elementary School in Ocean Springs, and began to receive medical treatment at Keesler Air Force Base.

¶5. On August 22, 1996, the chancellor found that it would not be in the best interest of the children to exercise jurisdiction in Mississippi, and granted Barbara's motion to dismiss. The chancellor then ordered Joel, who was on shore duty, to return the children to Barbara until final order from the Maryland courts. As of the date of this appeal, the children remain in Barbara's custody. Neither party has commenced legal proceedings in Maryland.

## DISCUSSION

### I. WHETHER THE CHANCELLOR COMMITTED REVERSIBLE ERROR IN GRANTING BARBARA'S MOTION TO DISMISS.

¶6. Application of the Uniform Child Custody Jurisdiction Act involves a three step process. First, the court must determine if it has authority or jurisdiction to act according to the guidelines set forth in Miss. Code Ann. § 93-23-5(1994). If the court determines that it does have authority over the action, it must follow the guidelines of Miss. Code Ann. § 93-23-13 (1994) to determine if it is the most appropriate and convenient forum. If jurisdiction is accepted, the court must determine if other state court judgments preclude the exercise of jurisdiction. *Stowers v. Humphrey*, 576 So.2d 138, 140 (Miss.1991).

¶7. The parties to this proceeding agree that the lower court had continuing jurisdiction to modify its original custody decree in this case separate and apart from Miss. Code Ann. § 93-23-5(1994). *Jones v. Starr*, 586 So.2d 788, 790 (Miss.1991). Thus, our focus appropriately shifts to the second step of the three step process. Miss.Code Ann. § 93-23-13 (1994) outlines the test for the most convenient forum under the UCCJA. It provides:

(1) A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

(2)A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, *among others*:

(a) If another state is or recently was the child's home state;

(b) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

(c) If substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state;

(d) If the parties have agreed on another forum which is no less appropriate; and

(e) If the exercise of jurisdiction by a court of this state would contravene any of the provisions of this chapter.

Miss. Code Ann. § 93-23-13(1), (2), & (3) (1994) (emphasis added).

¶8. At the time of the jurisdictional hearing, Joel was on shore leave. The children were lawfully residing with him in their Ocean Springs home of four years. They were enrolled in school, attending church, and receiving medical treatment, all in Ocean Springs. These factors were considered by the lower court, as well they should have been. However, the all encompassing "among others" factors of Miss. Code Ann. § 93-23-13(3)(1994) appear to not have been fully developed. We find them to be determinative.

¶9. The lower court awarded Barbara immediate custody of the children without affording Joel the opportunity to present testimony relating to the living arrangements of the children, parenting abilities of the parties, educational opportunities available to the children, or the quality of relationships sustained by the children. These factors, along with countless others that are necessarily case specific, are relevant when determining the most appropriate home for the children. *See **Albright v. Albright***, 437 So.2d 1003, 1005 (Miss.1983). The chancellor unfortunately ignored these factors, reasoning that he was not exercising full jurisdiction, but was only awarding custody until a Maryland court entered the modified final decree. This rationale is incorrect.

¶10. The simple fact is that Barbara is the parent who frustrated the original decree by separating herself from the Navy and moving the children to Maryland. Joel has remained in compliance. We cannot in good conscience allow her unilateral action to be used as a valid justification for declining the exercise of jurisdiction in Mississippi. It occurs to us that the entire spirit of the original decree was to ensure that the children would remain in their stable environment on the Mississippi Gulf Coast, no matter which parent was on shore leave at the time. Barbara violated that spirit when she uprooted the children from their Mississippi home and transplanted them into a new, unfamiliar domicile in Maryland. Her violation cannot be overlooked in the name of convenience.

¶11. Accordingly, we find the chancellor manifestly abused his discretion by refusing to exercise jurisdiction. This case is remanded for a full hearing on the appellant's petition for contempt and modification of the original decree.

¶12. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN, P.J., ROBERTS AND SMITH, JJ., CONCUR. PITTMAN, P.J., AND WALLER, J., CONCUR IN RESULT ONLY. BANKS, J., CONCURS WITH**

**SEPARATE WRITTEN OPINION JOINED BY PITTMAN, P.J. AND WALLER, J. McRAE, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY BANKS AND WALLER, JJ.**

**BANKS, JUSTICE, CONCURRING:**

¶13. I concur with the result reached by the majority but I do not reach that result based upon some supposed wrong done by Mrs. Shane in relocating her residence to Maryland. As a purely practical and legal matter, however, the chancellor should have resolved the custody and visitation issue presented by the original decree as applied to markedly changed circumstances. The children were here. Mr. Hasse had a valid, even if flawed, decree issued by the same chancery court giving him custody of the children at the time of the hearing. There was not, in my view, such an emergency as would require the chancellor to change the status quo in one breath and decline jurisdiction to finally resolve the matter in the next. There was nothing which in fact made Maryland a more convenient forum for either the children or their parents.

**PITTMAN, P.J., AND WALLER, J., JOIN THIS OPINION.**

**McRAE, JUSTICE, SPECIALLY CONCURRING:**

¶14. I agree with the majority's decision that the chancellor erred in refusing to assume jurisdiction over the case. The chancellor further erred in modifying the custody provisions of the decree after declining jurisdiction over the case, in sending the children back to Maryland with their mother, and in granting Hasse thirty days in which to file an action in Maryland, after which this action would be dismissed. Since Shane voluntarily relinquished custody of the children to their father subsequent to filing her motion to dismiss, the chancellor should have dismissed it as moot and ruled on the merits of Hasse's motion for contempt. Instead, the children have been uprooted from their home in Mississippi and, inevitably, will be uprooted again.

¶15. This Court has construed the Uniform Child Custody Jurisdiction Act as providing concurrent, rather than mutually exclusive, jurisdiction between states when the initial divorce or custody decree was issued in one state and the custodial parent and the children have moved to another state. *Johnson v. Ellis,* 621 So. 2d 661, 665 (Miss. 1993). Where, as in the case *sub judice*, the chancery court has continuing jurisdiction by virtue of having the original decree entered there or because it is the children's "home state," the court may decline to continue to exercise that jurisdiction if another forum is determined to be more convenient. *Id.* at 666-667; *Jones v. Starr,* 586 So. 2d 788, 790 (Miss. 1991). We will reverse the chancellor's findings only when they are manifestly wrong or clearly erroneous.

¶16. In this case, the chancellor's finding that it was in the children's best interests to allow the Maryland court rather than a Mississippi court to assume jurisdiction over the case was clearly erroneous. The decree was entered in Jackson County. The children had lived in Maryland only for a short time before the actions filed by their parents and then were returned by their mother to Jackson County to the home where they had grown up as well as to schools, churches and doctors familiar to them. They were living with their father in Mississippi at the time of these proceedings. By the

mother's own admission, the children have no ties to the State of Maryland. The chancellor apparently failed to consider these factors in taking into account "[i]f substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another state" pursuant to Miss. Code Ann. § 93-23-13(3)(c)(1994). *See **Siegel v. Alexander***, 477 So. 2d 1345, 1347 (Miss. 1985)(children's best interests were served by relinquishing jurisdiction to Texas where children had resided for one year before action was filed and two years prior to trial and practically all witnesses and evidence regarding their well-being was in Texas). There simply is no evidence that the interests of the Hasse children better would be served by relinquishing jurisdiction to the Maryland courts.

¶17. The chancellor clearly "missed the boat" in his ruling. He erred in declining to assume jurisdiction in one paragraph of his order and, in another, modifying the custody provisions of the original decree. The order created unnecessary upheaval for the children, clearly contrary to their best interests. Further, in "granting" Hasse thirty days in which to file an action regarding support and custody of the children in Maryland, where Shane admitted they had no contacts, the decision subjected Hasse to the unnecessary expense of pursuing an action in a court which had every reason to decline jurisdiction and created an additional delay in the determination of the children's custody arrangements. The chancellor would have steered a better course had he dismissed the motion to dismiss as moot and ruled on the merits of Hasse's petition to modify.

**BANKS AND WALLER, JJ., JOIN THIS OPINION IN PART.**