574 So.2d 24 (1990)
Lauralee CURTIS
v.
William Gregory CURTIS.
No. 90-CA-0075.
Supreme Court of Mississippi.
December 27, 1990.
*25 Ray Charles Evans, Forest, Wilton A. McNair, Pascagoula, for appellant.
Pat Donald, Morton, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and BLASS, JJ.
ROBERTSON, Justice, for the Court:

I.
This case is of a genre that tests the law's capacity to regulate human behavior. Interstate parental kidnappings following family breakups have been a scourge upon society. A decade ago the federal government and then this (and every other) state enacted comprehensive laws designed to end interstate jurisdictional wars wherein the courts of the several states had treated kidnapped children like cross-country ping pong balls.
This case presents a classic case of the parental and judicial behavior the statutes were designed to and do proscribe. A valid Utah decree granted custody of four children to their mother. Ten weeks later, the father took advantage of his weekend visitation and wrongfully brought the children to Mississippi and enlisted the aid of this state's courts to give him custody. The children have since been caught in the middle of a tug of war.
We hold the Utah courts never lost jurisdiction of the matter of the permanent custody of the children. With this we adjudge the legal issues tendered. In doing this almost three years after the fact, we have no illusion that we have ability to put Humpty Dumpty back together again. We hope from this fall all may know of our seriousness of purpose that the law's injunction be respected.

II.

A.
What is vital to keep in mind is that none of the parties to or affected by this proceedings had ever so much as set foot in Mississippi prior to Presidents' Day weekend in February of 1988.
Lauralee Curtis is, and at all relevant times has been, an adult resident citizen of Orem, Utah, and is approximately forty-three years of age. Lauralee was the Defendant below and is the Appellant here.
William Gregory Curtis was born January 20, 1947, and testified below that his address was Route 2, Box 139, Lena, Scott County, Mississippi, although he acknowledged that prior to February 14, 1988, he had been domiciled in Moroni, Utah. He has since moved to 291 Broad Street, Forest, Mississippi. Gregory was the Plaintiff below and is the Appellee here.
Lauralee and Gregory were married on January 21, 1967, at Hornbeck, Louisiana, at a time when each was nineteen years of age. Eight children were born of the marriage. The oldest child, Cheree Curtis, got married in June 1986, and has been emancipated. The other children whose custody is the subject of litigation are:
Grover Dale Curtis, born February 21, 1971.
Jolene Curtis, born April 14, 1974.
Gregory Jason Curtis, born January 31, 1976.
Darla Curtis, born June 25, 1979.
Charlotte Curtis, born August 5, 1982.

*26 William Brett Curtis, born March 26, 1983.
Jacob Walker Curtis, born April 26, 1985.
For twenty-one years, the Curtises were a mobile family, residing in a number of states, including Louisiana, Arizona, Texas, Idaho, and finally Utah  but never Mississippi.

B.
On March 9, 1986, at a time when the Curtises still lived in Utah, Lauralee filed suit for divorce in the District Court for the Fourth Judicial District of Utah. On December 4, 1987, the Utah District Court entered its final decree of divorce, dissolving the marriage of Lauralee and Gregory and placing with Lauralee the care, custody and control of the youngest four of the seven children, to-wit: Jacob Walker Curtis, William Brett Curtis, Charlotte Curtis, Darla Curtis. The three older children, Grover Dale Curtis, Jolene Curtis and Gregory Jason Curtis, were each given the choice which parent he or she wished to live with. Each chose his or her father. The decree further granted the non-custodial parent reasonable visitation rights in the case of each of the seven children.

C.
On or about February 11, 1988  only ten weeks later  Presidents Day was approaching and Gregory asked Lauralee if he could have the four younger children over the long holiday weekend. Lauralee agreed, Gregory promising to return them by Tuesday, February 16, 1988. Instead, learning (as he puts it) that the children had been abused while in Lauralee's custody, Gregory took off for Mississippi, arriving on February 14 at the home of Jim Moore, a friend who lived in Pearl. On February 16, 1988, Gregory filed with the Chancery Court of Scott County, a two-count complaint asking, first, for modification of the Utah custody decree, and, second, for a protective order under the Mississippi Protection From Domestic Abuse Law, Miss. Code Ann. §§ 93-21-1, et seq. (Supp. 1990) (hereinafter the "PDA").
Following an ex parte hearing, the Chancery Court entered an order vesting temporary custody of the four children in Gregory. The Chancery Court then caused process to issue for Lauralee which was served upon her in Utah by certified mail. Lauralee answered the Mississippi proceedings, first challenging subject matter and personal jurisdiction here and, thereafter, asserting the Utah custody decree and alleging that Gregory wrongfully detained the children in Mississippi contrary to the Uniform Child Custody Jurisdiction Act, Miss. Code Ann. § 93-23-15 (Supp. 1990)[1] (hereafter "UCCJA"), and the Federal Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738(A)(g)[2] (hereafter "PKPA").
On February 29, 1988, the Chancery Court of Scott County commenced a three-day hearing with both parties present and represented by counsel. At the conclusion of the hearing, the Court continued temporary custody in Gregory and otherwise took the entire matter under advisement. Nothing happened for over five months until August 9, 1988, when the Chancery *27 Court entered its order, holding that the PKPA stripped the Court of any authority to modify the Utah custody decree. Inexplicably, the Court continued in effect custody in Gregory under the authority of the Protection From Domestic Abuse Act, providing that this order "will remain in effect until further order of this Court."
On September 12, 1988, Lauralee repaired to the District Court for Utah's Fourth Judicial District and obtained an order requiring Gregory to show cause why he should not be held in contempt for withholding custody of the children contrary to the December 4, 1987, final decree of divorce. Back in Mississippi, on September 23, 1988, Lauralee moved anew to dissolve the protective order which the Chancery Court had continued in effect in its August 9 ruling. On December 5, 1988, the Chancery Court summarily denied Lauralee's motion and on grounds that it was frivolous assessed her with fees and expenses.
On October 4, 1988, Lauralee secured the services of Jerry Cobb, a Viet Nam veteran and self-styled "mercenary," and they came to Mississippi and (re)kidnapped the children and returned them to Utah. In response, Gregory returned to Chancery Court on October 24 with a second motion to modify the Utah custody decree and further for an order holding Lauralee in contempt. Following a hearing which Lauralee did not attend but at which she was represented by counsel, the Chancery Court, on December 5, 1988, held that it had jurisdiction because (a) the children had now been present in Mississippi for more than six months, (b) the parties had significant connections with Mississippi, and (c) modification was in the best interest of the children, presumably alluding to the UCCJA and specifically Section 93-23-5(1)(b)[3] thereof. The Chancery Court then entered an order granting Gregory permanent custody of all seven children.
Lauralee presses the present appeal from this order.

D.
While this appeal has been pending, further and important proceedings have taken place in Utah. In January of 1989, the judge of the Utah District Court apparently conferred by telephone with the Chancery Judge in Scott County, see Miss. Code Ann. § 93-23-11(3)[4]; Hobbs v. Hobbs, 508 So.2d 677, 680 (Miss. 1987); Coppedge v. Harding, 714 P.2d 1121 (Utah 1985), and became informed as to the course of proceedings in Mississippi. On January 12, 1989, the Utah District Court entered an order acceding to the Mississippi custody modification decree and relinquishing jurisdiction. Lauralee appealed and on March 27, 1990, the Court of Appeals of Utah reversed, holding the matter controlled by the federal PKPA, 28 U.S.C. § 1738(A)(d)[5]. Curtis v. Curtis, 789 P.2d 717 (Utah Ct.App. 1990).
*28 The Utah Court correctly read the PKPA as imposing three requisites for Utah's continuing jurisdiction:
(1) That Utah had jurisdiction for the initial custody decree;
(2) That Utah had current jurisdiction under its own state laws; and
(3) That the children or a parent reside in Utah.
Curtis, 789 P.2d at 725. Applying these requisites, the Court found, first, that there was no question of Utah's jurisdiction to enter the original decree back in December of 1987. Second, the Court found that Utah law provided for continuing jurisdiction in matters regarding the custody and support of children incident to divorce decrees. Finally, the Court found that Lauralee had continued Utah as her state of domicile. The Court further found that Utah had not declined to exercise its jurisdiction for the simple reason that Gregory never attempted to have the Utah courts consider and adjudge his claims that the custody of the children be modified. In the end, the Court of Appeals held
... that Utah neither lost nor declined to exercise its jurisdiction over the custody dispute in this case. It follows that, as a matter of federal law, Mississippi had no subject matter jurisdiction to modify the decree. This is so even though Mississippi might have had jurisdiction to enter an initial custody decree under the facts as they otherwise existed except for Utah's already having done so.
Curtis, 789 P.2d at 725.

III.
We first consider the emergency jurisdiction of the Chancery Court back on February 16, 1988. The UCCJA as enacted in this state provides for emergency jurisdiction where
[t]he child is physically present in this state and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;
Miss. Code Ann. § 93-23-5(1)(c) (Supp. 1990). As ever, subject matter jurisdiction turns on the well-pleaded allegations of the complaint. American Fidelity Fire Insurance Co. v. Athens Stove Works, Inc., 481 So.2d 292, 296 (Miss. 1985); Luckett v. Mississippi Wood, Inc., 481 So.2d 288, 290 (Miss. 1985). Here the complaint states a case of substantial neglect and abuse, although at the hearings thereafter Gregory's proof sounded far more like neglect.
We are sensitive to the practical plight of a chancery judge presented with an emergency petition such as this. He or she will necessarily hear but one side of the matter. The consequences of declining jurisdiction where a true emergency exists far outweigh the harm that may be inflicted where the court assumes a temporary jurisdiction which in time appears improvident. We assume the Chancery Court had temporary emergency jurisdiction in the premises. Castleberry v. Castleberry, 541 So.2d 457 (Miss. 1989); see Curtis, 789 P.2d at 722-23. Nothing in the PKPA precludes this view. 28 U.S.C. § 1738A(c)(2)(C)(ii).[6]

IV.
Emergencies by definition do not last and to say that the Chancery Court had temporary emergency subject matter jurisdiction in no way precludes plenary inquiry into the Chancery Court's permanent subject matter jurisdiction of the court.
Gregory sought modification of the Utah custody decree. Pretermitting for the moment federal full faith and credit considerations, we must confront the UCCJA's injunction *29 that, if Gregory has wrongfully taken the children from another state and brought them here, or has engaged in similar reprehensible conduct, our courts should ordinarily decline to exercise jurisdiction. Miss. Code Ann. § 93-23-15(1) (Supp. 1990). We have not been grudging in our enforcement of this statute. Aware of the national problem of interstate parental child kidnapping, (or "childnapping," as the phenomenon is sometimes called) we have strongly enjoined that our chancery courts turn a deaf ear to the pleas of those who wrongfully bring children into this state. See, e.g., Laskosky v. Laskosky, 504 So.2d 726, 731 (Miss. 1987); Hill v. Hill, 481 So.2d 227, 229-30 (Miss. 1985); Siegel v. Alexander, 477 So.2d 1345, 1347 (Miss. 1985); Walker v. Luckey, 474 So.2d 608, 612 (Miss. 1985); see also, Pearson v. Pearson, 458 So.2d 711, 713 (Miss. 1984).
Our most prominent authority, Owens By and Through Mosley v. Huffman, 481 So.2d 231, 239, 243, 245-46 (Miss. 1985), arises in the converse context: where the child has been wrongfully taken from this state. In Owens we said
if there has been a custody decree [in one state] awarding custody to one parent, and the other parent wrongfully takes the child to another state and seeks to secure a custody change, the court [of the latter state] shall not exercise jurisdiction. [Citations omitted.]
This simply means that if there has been a legal determination [in one state] that one parent has custody, when the other parent seeks to circumvent that legal determination by a court of another state, it cannot be done.
Owens, 481 So.2d at 243 [emphasis in original]. Owens discusses and cites with approval the quite similar cases of In Re Marriage of Hopson, 110 Cal. App.3d 884, 168 Cal. Rptr. 345 (1980); and Freeman v. Freeman, 547 S.W.2d 437 (Ky. 1977).
Wade v. Lee, 471 So.2d 1213 (Miss. 1985) affords a useful analogy. The Chancery Court of Sharkey County, Mississippi, had decreed the parties divorced and given the mother custody of their young son. On the weekend in issue the mother allowed the boy to go to Jackson and spend the weekend with his father. When the mother arrived on Sunday night in Jackson, the father was obviously intoxicated and refused to surrender custody of the boy. The mother immediately sought relief via habeas corpus in the County Court of the First Judicial of Hinds County. In Wade we upheld the County Court's finding of an emergency circumstance and issuance of the writ. We recognized, however, that the Chancery Court of Sharkey County had issued the decree which controlled the permanent custody of the child and that the Chancery Court had continuing jurisdiction of the matter. We held the Hinds County custody award a temporary one and placed a ninety day limit on it, relegating the parties to the Chancery Court of Sharkey County for any more permanent modifications of custody as may be appropriate. By analogy, the Chancery Court of Scott County in today's case had temporary subject matter jurisdiction but this hardly ousted the more permanent jurisdiction of the District Court in Utah.
Notwithstanding the foregoing, Gregory strenuously argues that, because the children have lived in Mississippi for an excess of six consecutive months, Mississippi has become their "home state." Miss. Code Ann. § 93-23-3(f) (Supp. 1990)[7]. Six months residence is normally sufficient to confer jurisdiction upon the courts of this state to make initial or modification custody decrees. Miss. Code Ann. § 93-23-5(1)(a) (Supp. 1990)[8]. The argument *30 overlooks the reason why the children were in Mississippi in the first place. They were here because Gregory brought them here in rather clear contravention of the perfectly valid Utah custody decree, and they remained here by virtue of the Chancery Court's custody and protective order. Without hesitation we hold that such court ordered involuntary residence does not generate so much as a single tick of the UCCJA's six consecutive months clock.
We are urged further that Mississippi has jurisdiction, alternatively, on grounds it is in the best interest of the child that this state assume jurisdiction, because Gregory and the children have, in the words of the UCCJA
... a significant connection with the state and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships.
Miss. Code Ann. § 93-23-5(1)(b) (Supp. 1990). Pertaining to this statute we are told that Gregory and the children have lived in Scott County since February, 1988, and that this satisfies the significant connection test. The argument misreads the statute. Having in mind the dominant purpose of the UCCJA to prevent interstate parental kidnapping, and particularly Section 93-23-15's strong injunction against wrongfully taking children from one state to another, this jurisdictional requisite may only sensibly be read to require that Gregory and the children "have a significant connection" with Mississippi prior to filing the application for custody modification. For present purposes, this must relate to the application Gregory filed on February 16, 1988. The facts reflect that prior to that date, Gregory and the children had at most been in Mississippi for one or two days. As a matter of law, we hold that this is not "a significant connection" within Section 93-23-5(1)(b). We find this reading reinforced by Section 93-23-5(2)[9] which provides that, with exceptions not here relevant,
physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
Though not pressed, the UCCJA provides a final basis upon which this Court might assume jurisdiction and modify custody. This is where there is no other state that appears to have jurisdiction or where another state has declined to exercise jurisdiction. Miss. Code Ann. § 93-23-5(1)(d) (Supp. 1990)[10]. The Court of Appeals of Utah has made it quite clear that the courts of that state have not and do not decline to exercise jurisdiction, Curtis, 789 P.2d at 725, and we accept that declaration for present purposes.
We recognize that the Chancery Court's decree was in substantial part predicated upon the Protection From Domestic Abuse Act. In interstate custody conflicts such as this, the UCCJA provides the exclusive state law source for determining state court subject matter jurisdiction. Walters v. Walters, 519 So.2d 427, 428 (Miss. 1988). The Chancery Courts have no power under *31 the PDA that are inconsistent with the jurisdictional injunctions of the UCCJA.
We have considered as well the provisions of the federal PKPA. Inasmuch as analysis of the facts of this case under that enactment would lead to the same result we here decree, we pretermit discussion. See Curtis v. Curtis, 789 P.2d at 721-725, 726.

V.
In sum, we hold that the Chancery Court of Scott County correctly assumed temporary emergency jurisdiction back on February 16, 1988. On the other hand, that Court erred when it continued to exercise subject matter jurisdiction over this matter after it should reasonably have become apparent that there was no clear and present danger to the children from permitting adjudication of modification, if any, of their custody in the courts of the State of Utah.
We further hold that the Court erred when it ordered custody permanently changed from Lauralee to Gregory, the error being one of jurisdiction and not on the merits of the controversy. We reverse and render and endorse without qualification the Utah Court of Appeal's final injunction that
Nothing in this opinion should be read to favor a custody determination for either ... [Gregory] or Lauralee. We merely conclude that Utah was the only proper forum in which to bring a modification proceeding. [Gregory] ... is in no way precluded from seeking a custody modification in Utah.
Curtis, 789 P.2d at 726, n. 18.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN and BLASS, JJ., concur.
ANDERSON, J., not participating.
NOTES
[1] § 93-23-15. Jurisdiction declined by reason of petitioner's conduct.

(1) If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction if this is just and proper under the circumstances. (2) Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdiction if this is just and proper under the circumstances.
[2] § 1738A. Full faith and credit given to child custody determinations.

(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.
[3] § 93-23-5. Jurisdiction.

(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
* * * * * *
(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one (1) contestant, have a significant connection with the state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships; ... .
[4] § 93-23-11. Simultaneous proceeding in another state.

(3) If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction, it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with sections 93-23-37 through 93-23-43. If a court of this state has made a custody decree before being informed of a pending proceeding in a court of another state, it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction, it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum.
[5] § 1738A. Full faith and credit given to child custody determinations.

(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.
[6] § 1738A. Full faith and credit given to child custody determinations.

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if 
(2) one of the following conditions is met: (C) the child is physically present in such State and ... (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;
[7] § 93-23-3. Definitions.

(f) "Home state" means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six (6) consecutive months, and in the case of a child less than six (6) months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.
[8] § 93-23-5. Jurisdiction.

(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state.
[9] § 93-23-5. Jurisdiction.

(2) Except under paragraphs (c) and (d) of subsection (1) of this section, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
[10] § 93-23-5. Jurisdiction.

(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(d)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a), (b) or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.