629 So.2d 548 (1992)
Rita Gayle Allen HUNT
v.
Donald Corwin HUNT.
No. 91-CA-0934.
Supreme Court of Mississippi.
December 10, 1992.
Opinion Issued on Rehearing October 14, 1993.
*549 J. Niles McNeel, David E. Bane, Jr., McNeel & Ballard, Louisville, for appellant.
G. Jyles Eaves, Eaves & Eaves, Louisville, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and BANKS, JJ.
EN BANC.
Affirmed.

ON PETITION FOR REHEARING
DAN M. LEE, Presiding Justice, for the Court:

I. INTRODUCTION
This case was initially affirmed, per curiam, by order dated December 31, 1992. After considering the arguments posited by the parties on petition for rehearing, the Court issues the following opinion detailing its reasoning.
In this case, the appellant, Rita Hunt, appeals from an order by the Chancery Court of Winston County, granting custody of her two sons to the father-appellee, Donald Hunt. Rita assigns the following as error.
(1) The Chancery Court did not have personal jurisdiction over Rita Gayle Allen Hunt.
(2) The Chancery Court lacked subject matter jurisdiction in this case.
(3) Mississippi was an inconvenient forum under the Uniform Child Custody Jurisdiction Act. (UCCJA)

II. STATEMENT OF THE CASE
Donald and Rita Hunt were married on October 10, 1985. They resided in Winston County, where Donald had lived his entire life. During the marriage, one child, Joshua, was born. The marriage lasted only a short time until Donald filed for divorce on October 19, 1987. He alleged as grounds for the divorce habitual cruel and inhuman treatment, uncondoned adultery and irreconcilable differences. Donald sought custody of Joshua and alleged that Rita was not a fit parent due to her criminal record and mental problems which caused her to shoplift.
The chancellor entered a temporary decree on January 1, 1988, which granted temporary custody of Joshua to Donald. Another temporary decree was entered on February 5, 1988, which continued the prior temporary decree and further ordered both parties to submit to blood tests to determine the paternity of the child which Rita was then carrying. Rita delivered the baby, Albert, on June 8, 1988, in Fort Worth, Texas. She had grown up in Fort Worth and had returned there after the separation from Donald.
The chancellor entered a "Final Decree of Divorce" on September 16, 1988. The decree granted a divorce to Donald on grounds of habitual cruel and inhuman treatment and awarded him permanent custody of Joshua, finding that Rita was an unfit mother. The chancellor granted temporary custody of Albert to Rita and ordered Donald to pay $200 per month in child support, but reserved a ruling on the permanent custody of Albert until blood tests were completed.
On May 5, 1989, Rita filed a motion seeking permanent custody of Albert and child support, as well as a citation of contempt against Donald. Donald filed a cross-complaint seeking custody of Albert, since it had been determined through the blood test that he was Albert's father. The court's "final decree," filed June 24, 1989, continued permanent custody of Joshua with Donald, since *550 no material change in circumstances had been shown, and granted permanent custody of Albert to Rita. The decree also provided that Donald pay $200 per month in child support and $750 in attorney's fees to Rita. Visitation rights were also granted to both parents.
On August 17, 1990, Donald filed a "Petition for Modification" of custody. He elected to have a process server serve the summons on Rita in Fort Worth. Keith Killough, a private investigator from Jackson, testified that he served process on Rita.
Rita testified that she received a subpoena stating only that she had to go to court in Winston County on September 6, 1990, and that nothing else was attached to the subpoena. She travelled to Winston County and was in court on September 6, when she asked the chancellor to grant her a five day continuance to obtain counsel. The chancellor granted Donald's request for the entry of a default judgment on October 9, 1990, after Rita failed to contact the court. On October 11, 1990, after a hearing on the custody modification petition was held in Rita's absence, the chancellor ordered that custody of Albert Hunt be given to Donald and that Rita pay $200 per month in child support.
Apparently, Donald took physical custody from Rita the day after Thanksgiving, 1990, when Rita brought Albert for visitation and he showed her the court's decree. She then filed her motion for reconsideration pursuant to MRCP 60(b)(4), on December 4, 1990, in which she alleged that the Chancery Court of Winston County had no jurisdiction to modify Albert's custody under the Uniform Child Custody Jurisdiction Act.
The chancellor agreed with Rita and entered an order, dated February 11, 1991, sustaining her motion for reconsideration and vacating the order granting Donald custody of Albert. In turn, on March 4, 1991, Donald filed a motion for reconsideration of the February 11, 1991, order. Finally, the court entered an order and opinion dated August 3, 1991, setting aside the February 11, 1991, order and reinstating its October 9, 1990 order granting custody of Albert to Donald.

III. ANALYSIS

Standard of Review
In appeals from Chancery Court, this Court will not disturb the chancellor's finding of fact unless it is not supported by substantial evidence or is manifestly wrong. Gregg v. Montgomery, 587 So.2d 928 (Miss. 1991); Stevenson v. Stevenson, 579 So.2d 550, 552-53 (Miss. 1991); Caldwell v. Caldwell, 579 So.2d 543, 547 (Miss. 1991); Clark v. Myrick, 523 So.2d 79, 80 (Miss. 1988). However, "when the determination is one of law rather than fact, `the familiar manifest error/substantial evidence rule does not prevent this Court from conducting a de novo review of the chancellor's findings.'" Stevenson, 579 So.2d at 553 (quoting Planters Bank & Trust Co. v. Sklar, 555 So.2d 1024, 1028 (Miss. 1990).

Issue (1): The Chancery Court did not have personal jurisdiction over Rita Allen Hunt.

1.
Rita's first argument is that the Chancery Court never had personal jurisdiction over her because she did not receive proper service of process prior to the hearing against her in October of 1990, where the court granted custody of Joshua and Albert to Donald. Donald argues that her admission of actual notice and her appearance in court were sufficient for the court to obtain personal jurisdiction.

2.
Cooley v. Cooley, 574 So.2d 694 (Miss. 1991), is dispositive of this issue, despite Rita's protestations to the contrary. This Court stated in Cooley that:
When a divorce has been granted by a Mississippi court and the court "had personal jurisdiction of the defendant at the time of the divorce that personal jurisdiction continues." Covington v. Covington, 459 So.2d 780, 781 (Miss. 1984). Since the court has personal jurisdiction over the parties, notice rather than actual service of *551 process is all that is required for subsequent pleadings. Covington at 782.
Id. at 697-98.
Cooley plainly holds that personal jurisdiction continues for the court that entered the divorce decree and that actual notice to a party is all that is required. This assignment of error has no merit.

Issue (2): The Chancery Court lacked subject matter jurisdiction in this case.

1.
Subject matter jurisdiction deals with the power and authority of a court to consider a case. Matter of Adoption of R.M.P.C., 512 So.2d 702, 706 (Miss. 1987). As such, subject matter jurisdiction may not be waived and may be asserted at any stage of the proceeding or even collaterally. Id.
Rita argues that under the provisions of the Uniform Child Custody Jurisdiction Act, codified as Miss. Code Ann. §§ 93-23-1  93-23-47 (Supp. 1992), the Chancery Court of Winston County has never had jurisdiction to determine who has custody of Albert, who was born in Texas prior even to the entry of the divorce decree. Donald argues that the court had continuing jurisdiction because it entered the divorce decree and the temporary original custody decree.

2.
In connection with our analysis of this issue, we find the following facts to be especially helpful. First, the parties were married in Mississippi and resided in this State throughout the marriage. One child, Joshua, was born in this State. Donald Hunt was granted a divorce on the grounds of habitual cruel and inhuman treatment by a Mississippi court (the same court that entered the decree now on appeal). As part of the contested divorce, Donald was given custody of Joshua and tests were ordered to eventually determine the paternity of the child Rita was carrying. Rita Gayle Allen Hunt removed herself from this State with the result that Albert was born in Texas. Later, she voluntarily returned and petitioned the lower court to enter a custody decree with respect to Albert. Finally, it must be noted that Donald and Joshua Hunt continue to reside in Mississippi.
In considering whether a Chancery Court should proceed in a child custody matter, this Court has held that the chancellor must undertake a three step process.
A court must first determine if it has authority, or jurisdiction, to act following the guidelines of § 93-23-5. If a court determines that it does not have jurisdiction the process stops there. However, if that hurdle is cleared, a determination is made as to which court is the more appropriate and convenient forum under the guidelines of § 93-23-13. A court may decline to exercise jurisdiction if it is not the most appropriate or convenient forum. If the court accepts jurisdiction as the more convenient forum, the court must determine if the action to be taken is foreclosed by an order or judgment of the other state court. Hobbs v. Hobbs, 508 So.2d 677, 680 (Miss. 1987).
Stowers v. Humphrey, 576 So.2d 138, 140 (Miss. 1991).
The first step of this inquiry is the difficult one for purposes of this appeal. This Court's application of the Uniform Child Custody Jurisdiction Act (UCCJA) has created some confusion. In some cases, the Court has stated that the "exclusive method of determining subject matter jurisdiction in child custody cases is the UCCJA, which supersedes any contrary decisional and statutory law." Walters v. Walters, 519 So.2d 427, 428 (Miss. 1988). Accord, Curtis v. Curtis, 574 So.2d 24, 30 (Miss. 1991); Hobbs v. Hobbs, 508 So.2d 677 (Miss. 1987). In other cases, however, this Court has taken pre-UCCJA law, carried it over and considered it in addition to the UCCJA. For instance, in Stowers v. Humphrey, 576 So.2d 138 (Miss. 1991), the Court considered the case of a couple with two children who were living and divorced in Mississippi. The mother received custody of the children by the original divorce decree and moved the children to Alabama shortly thereafter. When the husband petitioned the Mississippi court for a modification of the decree, the wife filed another action in Alabama seeking a reduction of the husband's parental rights. The Chancery Court found *552 that it did not have jurisdiction over the case since the wife and children had resided in Alabama for two and a half years. This Court disagreed, stating:
The UCCJA notwithstanding, this Court has stated that a chancery court that enters the original decree has continuing jurisdiction to subsequently modify its custody order even after the parent and child have moved from the state. Bradshaw v. Bradshaw, 418 So.2d 64, 65 (Miss. 1982). Bradshaw preceded the adoption of the UCCJA by this state; however, subsequent cases interpreting the UCCJA's jurisdiction section do not reject continuing jurisdiction. See Siegel v. Alexander, 477 So.2d 1345 (Miss. 1985); Hobbs v. Hobbs, 508 So.2d 677 (Miss. 1987); Roberts v. Fuhr, 523 So.2d 20 (Miss. 1987) (continuing jurisdiction found because of a ne exeat bond). A court that enters the original custody decree has jurisdiction to subsequently modify the decree separate and apart from the jurisdictional section of the UCCJA.
Stowers v. Humphrey, 576 So.2d at 141. Accord, Jones v. Starr, 586 So.2d 788 (Miss. 1991); Roberts v. Fuhr, 523 So.2d 20 (Miss. 1987).
The tension that exists between these two lines of cases should certainly be examined and addressed when presented in the proper context. In the present case, however, § 93-23-5, by its express terms, clearly and unequivocally establishes the lower court's subject matter jurisdiction for determining custody of Albert Hunt. Consequently, resolution of the "continuing jurisdiction" dilemma is not necessary to determine the outcome of this appeal.
Section 93-23-5 Miss. Code Ann. (1972 & Supp. 1992), provides, in pertinent part:
(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
.....
(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one (1) contestant, have a significant connection with the state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships.
(3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

(emphasis added).
This language clearly recognizes the lower court's jurisdiction to determine the custody of Albert Hunt. The facts plainly show that both Albert and Donald had a "significant" connection with Mississippi at the time of the hearing below. Donald by virtue of residency within the state and Albert by virtue of his family ties to his father, his brother, and other relatives. As for the substantial evidence concerning Albert's future care, protection, training, etc., the fact that Rita was adjudicated an unfit mother with respect to Joshua in a Mississippi court clearly shows the existence of such evidence in this State. The record indicates that similar evidence of unfitness exists in Texas. However, it is entirely unreasonable and contrary to Albert's best interests to subject him to dangerous living conditions while his father relitigates an issue previously established by a competent Mississippi court. A contrary interpretation of the statute would render part (1)(b) as well as part (3) virtual nullities. Clearly this was not the result contemplated by the legislature.
At this point a brief digression on Albert's connections to Mississippi is in order. These connections, while doubtless "significant," are admittedly not overwhelming. Indeed, such connections might not be sufficient to satisfy the jurisdictional requirements of § 93-23-5(1)(b) in all cases. However, where, as in this case, a child is removed from this State prior to the time when his custody is ripe for determination, e.g. prior to birth, a chancellor exercising jurisdiction over the custody of children already born into the marriage should also be able to later determine custody of the child born subsequent to the separation but prior to the dissolution of the marriage.
*553 Our case law establishes that statutes should not be interpreted so as to reach an unreasonable result. Miss. Ins. Guaranty Ass'n v. Vaughn, 529 So.2d 540 (Miss. 1988); Brady v. John Hancock Mut. Life Ins. Co., 342 So.2d 295, 303 (Miss. 1977). It is beyond unreasonable to hold that no court in any state has jurisdiction over all the children born to a married couple prior to a divorce decree. Under such a ruling neither Mississippi nor Texas could examine the Hunt family unit as it existed prior to the divorce and determine what custody arrangement would be in both the children's best interest. Instead, even though Donald prevailed in Mississippi in his efforts to have his ex-wife declared an unfit parent, he would be forced to return Albert to her for the duration of any Texas proceedings. Moreover, under such a ruling, if Albert had been born sooner, he, like his brother Joshua, would have had his custody determined by the lower Mississippi court, regardless of where his mother took him afterwards. To allow such a critical matter to turn on a factual distinction as irrelevant as the situs of birth is simply wrong. Obviously this would make the governing event subject to much manipulation.
The Court is aware of, and endorses, the official comment to the uniform act which provides:
[The purpose of subsection (b)] is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the child's best interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state. The submission of the parties to a forum, perhaps for purposes of divorce, is not sufficient without additional factors establishing closer ties with the state.
We agree that the UCCJA was generally intended to limit subject matter jurisdiction. The essential question for applying the statute to the present facts is why did our legislature decide that jurisdictional limitation was a worthy goal? The short answer is that uniform legislation was seen as a solution to a national epidemic of parental kidnapping. See generally, Annotation, Child custody: when does state that issued previous custody determination have continuing jurisdiction under Uniform Child Custody Act or Parental Kidnapping Prevention Act, 28 USCS § 1738A, 83 ALR4th 742, 747-50 (1991). Thus, jurisdictional limitations were intended to prevent a noncustodial parent from seeking custody in his or her home state after unlawfully removing the child from the custodial parent's (and the child's) home state. Id. Nothing could be farther from the facts of the current case. In this case the Court must deal with a parent who has been adjudicated unfit but who objects to a custody determination by the state that would have been the child's home state but for the unilateral actions of that parent. Under these facts the statements in the official comment on curtailing jurisdiction are inapposite. Instead, we focus on the child's best interest and the substantial relevant evidence that was available to the lower court and affirm the finding of jurisdiction and the custody order.

Issue (3): Mississippi is an inconvenient forum for this action under the Uniform Child Custody Jurisdiction Act.
Rita cites Miss. Code Ann. § 93-23-13(3) (Supp. 1992) in support of her contention that the Chancery Court should not have considered this case because it was an inconvenient forum. She points out that Albert was born in Texas and lived there until Rita brought him to Mississippi for visitation on Thanksgiving of 1990; that all of Donald's witness subpoenas were issued in Texas; and that all of the witnesses, family and child care workers that Rita would call to testify were in Texas.
Because Rita did not appear before the Winston County Chancery Court, however, forum non conveniens, as codified in Miss. Code Ann. § 93-23-13 (Supp. 1992) was not presented to the chancellor as a bar to the action. Ordinarily, a matter not presented to the trial court for its decision will *554 not be considered as grounds for reversal by this Court. Parker v. Game and Fish Comm., 555 So.2d 725, 730 (Miss. 1989); First Miss. Nat. Bank v. S & K Enterprises, 460 So.2d 839, 841 (Miss. 1984). Forum non conveniens is extremely similar to a defense of improper venue, which must be presented to the trial court by either a motion or responsive pleading before trial or be deemed waived. MRCP 12(h)(1); Belk v. State Dept. of Public Welfare, 473 So.2d 447, 451 (Miss. 1985).
Although there is no Mississippi case which expressly holds that forum non conveniens, as a defense, is waived by the failure to raise it before trial, other jurisdictions so hold. Wilburn v. Wilburn, 192 A.2d 797, 801 (D.C.C.A. 1963); Flaiz v. Moore, 359 S.W.2d 872, 875 (Tex. 1962). Further, forum non conveniens is the type of defense which should be presented before trial; if it is not and trial proceeds, the rule has no further application, i.e., the harm forum non conveniens was intended to prevent, trial in a distant forum, has already occurred.
Since Rita failed to appear after receiving sufficient notice of the petition for modification, she waived the issue of forum non conveniens. This assignment of error had no merit.

CONCLUSION
The fact that Albert was born in Texas while his parents were seeking a divorce in Mississippi complicates the application of our custody jurisdiction statute in this case. It also differentiates this case from our previous interpretations of § 93-23-5. Subsection (1)(a) and the "home" state concept cannot be mechanically applied to these heretofore unconsidered facts. To do so would produce the unreasonable result that jurisdiction over the children in the Hunt family would be split between courts in Mississippi and Texas. Instead, we give effect to the alternative jurisdictional requirements set out in subsection (1)(b) and affirm the chancellor.
AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, BANKS, McRAE, JAMES L. ROBERTS and SMITH, JJ., concur.
PITTMAN, J., concurs in result only.