ON PETITION FOR CERTIORARI

PITTMAN, Justice, for the Court:
This Court granted a petition for writ of certiorari filed by E.M.C. after the Court of *577 Appeals affirmed the decision of the Monroe County Chancery Court. The chancery court found that E.M.C. had abandoned his daughter S.M., that his parental rights should be terminated, and that S.M. should be adopted by her stepfather, W.S.M. After careful consideration, we reverse and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY

S.V.M., raised in Smithville, Mississippi, married E.M.C. in May of 1984 and moved with him to Indiana. The two had a child, S.M., bom August 14, 1985. The couple separated in September of 1986, and S.V.M. initiated divorce proceedings in the Allen County (Indiana) Superior Court. By order of September 30, 1986, S.V.M. was awarded temporary custody of S.M., and ordered not to remove the child from the jurisdiction of the court. S.V.M. left Indiana around March 10, 1987, with S.M., and the two traveled to Smithville, Mississippi, where they took up residence with S.V.M.’s mother. On April 15,1987, the Indiana court set a final hearing in the divorce for April 1987. The hearing was actually held in the Indiana court on May 4, 1987; S.V.M. was not present, but Brian T’Rindt, an attorney, appeared on her behalf. On the recommendation of a referee, the court awarded custody of S.M. (still in Mississippi) to E.M.C.
On November 16,1987, S.V.M. filed a complaint for modification against E.M.C. in the Monroe County Chancery Court, seeking full custody of S.M. S.V.M. stated that she and E.M.C. had been divorced by decree of May 4, 1987, and apparently attached a copy of the order. S.V.M. did not refer to the September 1986 order from Indiana which had granted her temporary custody of S.M. and had forbidden her from leaving the state. 5.V.M. averred that there had been a substantial and material change in circumstances “in that [E.M.C.] who was given custody by the Indiana court has made no attempt to even visit with the minor child of the parties, much less have the child placed in his custody” since she and S.M. had moved to Mississippi in March of 1987. S.V.M. stated that E.M.C. had “actual knowledge as to [S.V.M’s] mother’s residence and knowledge that she is residing there,” but had failed to contact her. S.V.M. requested an award of child support, and that E.M.C. be denied visitation rights, or that his visitation rights “be substantially restricted due to his conduct with the minor child.” S.V.M. asserted that “it was [E.M.C.’s] sexual activities toward the child that caused her to file for a divorce....” S.V.M. further stated that despite her efforts to find an address for E.M.C., his current address was unknown, and she requested that process be issued by publication. A summons for E.M.C. was published four times (weekly) in the Aberdeen Examiner to appear and defend against the complaint on December 29, 1987, in the Monroe County Chancery Court.
On December 31, 1987, an order was entered in the chancery court finding that: (1) S.V.M. had been a resident of Monroe County for over six months; (2) S.M. had resided within the jurisdiction of the court for over six months; (3) it was in S.M.’s best interest that the chancery court assume jurisdiction; (4) has been issued for E.M.C. by publication, and he was “properly before this Court”; (5) there had been a substantial and material change in circumstances since the May 4th judgment of divorce, “in that the minor child of the parties has been in Mississippi with [S.V.M.] at the residence of the child’s maternal grandparent”; (6) E.M.C. had made no attempt to contact S.M. and had not visited in more than six months; and (7) it was in S.M.’s best interest to modify the Indiana decree, and to grant S.V.M. “the temporary full care, custody and control of S.M.,” with visitation rights reserved to E.M.C. “at such time as he should petition the Court to exercise said visitation rights.”
S.V.M. was apparently arrested for contempt of the Indiana custody order in Mississippi in February 1988, at which point E.M.C. learned of the custody modification entered by the chancery court. At the prompting of E.M.C.’s attorney, extradition proceedings were begun against S.V.M., with an executive order issued by the Indiana governor’s office on March 28,1988, demanding S.V.M.’s return from Mississippi. On April 25, 1988, E.M.C. also commenced a contempt proceeding against S.V.M. in the *578 Allen County Superior Court. In this complaint, E.M.C. specifically contested the validity of the Monroe County Chancery Court order on jurisdictional grounds. According to E.M.C.’s attorney, since service was not obtained on S.V.M., the Indiana judge issued a civil bench warrant, valid for six months, and that every six months thereafter, the attorney would reset the matter for hearing and obtain a new warrant.
According to E.M.C., in October of 1988, when he contacted authorities in Mississippi to learn the status of proceedings against S.V.M., he learned that Indiana had dropped the criminal charge against S.V.M.. According to E.M.C.’s lawyer, the Indiana prosecutor’s office had dropped the charges due to receiving one thousand letters on S.V.M.’s behalf. E.M.C. alleged that T.K. Moffett, S.V.M.’s lawyer through part of this proceeding, had caused an article to be published in a magazine which alleged that S.V.M. and S.M. had been victims of sexual abuse, that she had left Indiana for this reason, and that readers should contact the appropriate authorities in Indiana to express support and stop her extradition.
On May 22, 1992, S.V.M. and her new husband, W.S.M., filed a complaint for adoption in the Monroe County Chancery Court, naming E.M.C. as defendant. The complaint referenced the December 29, 1987, order of the Monroe County Chancery Court, and asserted that E.M.C. had not petitioned the court to obtain visitation rights with S.M., as the court order had provided. The complaint further stated that E.M.C. had not contacted S.V.M. or S.M., nor had he made any attempt to support S.M. The petition stated that S.V.M. and W.S.M. had married in October of 1990; that S.M., S.V.M. and W.S.M. had lived together since then; that S.M. considered W.S.M. her father; that W.S.M. considered S.M. his daughter; and that it was in S.M.’s best interest to be adopted by W.S.M. According to the docket, a copy of the complaint was mailed to E.M.C. at the recited address along with a summons requiring him to mail or deliver a written response to the complaint within thirty days of May 27,1992. The summons was also published in the Aberdeen Examiner four times (weekly). A hearing was set for July 22, with a copy of the order setting the hearing apparently sent to E.M.C. at the recited address. On July 21, Jeffrey Navarro, a lawyer retained by E.M.C., filed an answer to the complaint, disputing the chancery court’s jurisdiction and the accuracy of its findings, and requesting a dismissal. The trial was eventually held on November 12, 1992, and January 11, 1993.
At the commencement of trial, EM.C.’s lawyer moved to dismiss on the grounds that the court lacked jurisdiction, arguing that the Indiana court had jurisdiction over S.M. and the issue of her custody, and that the Mississippi court should give full faith and credit to the Indiana decree giving custody to E.M.C. The chancellor found that there was sufficient basis for jurisdiction over S.M., in light of the fact that she had been living in Mississippi for some time, and denied E.M.C.’s motion to dismiss.
The chancellor’s order was entered on February 17, 1993. The chancellor referenced the December 29,1987, order granting temporary custody of S.M. to S.V.M., and stated that E.M.C. had been “made aware of the Decree of Modification shortly after its entry.” The court found that it had jurisdiction of the parties and subject matter. The opinion stated in part:
The proof shows that since the mother moved with the child to Monroe County, Mississippi on or about March 10,1987 at a time when the child was two (2) years of age the father has had no contact whatsoever with the child.
The father has paid no child support, sent no cards or gifts and has had no contact with the child since on or about March 10, 1987. The father has made no effort to initiate or enjoy any relationship with the minor.
The criminal proceedings the father instituted against the mother after she and the child moved from Indiana did not inure to the benefit of the child.
The father and the child do not know each other, but the fault rests with the father, who has dismally failed as a father.
*579 The chancery court found the proof to be “strong, clear and convincing” that E.M.C. had abandoned S.M. within the meaning of Miss.Code Ann. § 93-15-103, and that such abandonment justified the termination of his parental rights. The chancery court further found that it was in S.M.’s best interest to be adopted by her stepfather W.S.M.
On appeal, the Court of Appeals affirmed the chancery court’s judgment. E.M.C. petitioned this Court for certiorari on the following issues:
I. The Court of Appeals’ decision conflicts with this Court’s decision in Owens, By and Through, Mosley v. Huffman, 481 So.2d 231 (Miss.1985), in failing to recognized the validity of the Indiana decree.
II. An issue of broad public importance is involved: child custody in a highly mobile society.
I.
Miss.Code Ann. § 93-23-15 provides in part:
(1) If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction if this is just and proper under the circumstances.
(2) Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdiction if this is just and proper under the circumstances. ...
Section 93-23-27 adds:
(1) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree, and (b) the court of this state has jurisdiction. (2) If a court of this state is authorized under subsection (1) of this section and section 93-23-15 to modify a custody decree of another state it shall give due consideration to the transcript of the record and other documents of all previous proceedings submitted to it in accordance with section 93-23-43.
E.M.C. relies on Owens v. Huffman, 481 So.2d 231 (Miss.1985), which involved a custody dispute between a mother and grandparents. The grandparents had taken the daughter to Texas and had instituted proceedings to terminate the mother’s parental rights. Once the mother’s parental rights were terminated in the Texas courts, the grandparents moved to Arizona, where they obtained an agreed order from the mother that custody should be given to the grandmother. The mother later claimed that this was signed under threats and duress. Subsequently, while the child in question was visiting the mother in Mississippi, the mother instituted custody proceedings in Mississippi. The chancery court ruled that custody was properly in the Mississippi courts, and this Court agreed, finding that neither the Texas nor the Arizona decrees were entitled to full faith and credit. Specifically, the Court stated:
But, if there has been a custody decree awarding custody to one parent, and the other parent wrongfully takes the child to another state and seeks to secure a custody change, the court shall not exercise jurisdiction. See: Neger v. Neger, 93 N.J. 15, 459 A.2d 628, 633-635 (1983); Buchanan v. Malone, 415 So.2d 259 (La.App.1982). This simply means that if there has been a legal determination that one parent has custody, when the other parent seeks to circumvent that legal determination by a court of another state, it cannot be done.
[[Image here]]
We have no hesitancy in stating that under the laws of this state, and our interpreta *580 tion of the Act, that if the Mosleys had abducted this child from the mother in Arizona, no court of this state would be authorized to exercise jurisdiction except in a clear showing that the child’s interest required it. See: Hill v. Hill, 481 So.2d 227 (Miss.1985). And, of course, there was no showing whatever as to it being in Christeen’s interest for the Arizona court to take jurisdiction.
Owens, 481 So.2d at 243-44.
A similar situation was presented in Curtis v. Curtis, 574 So.2d 24 (Miss.1990), where a father kidnaped his children from the custodial parent in Utah and brought them to Mississippi, claiming an emergency situation due to abuse. The chancery court gave temporary custody to the father due to the alleged emergency, but then subsequently ordered that permanent custody remain with the father. This Court reversed, relying on Owens, and stating that Mississippi could not become a child’s home state under the six-month rule of the UCCJA where the child had been wrongfully brought to this state and the chancery court had condoned this. ‘Without hesitation we hold that such court ordered involuntary residence does not generate so much as a single tick of the UC-CJA’s six consecutive months clock.” Curtis, 574 So.2d at 30. The Court also found that the portion of § 93-23-5(l)(b) which would allow jurisdiction where the child and one parent had a significant connection with the state applied only to connections which existed “prior to filing the application for custody modification.” Curtis, 574 So.2d at 30.
The decision on whether to accept or decline jurisdiction under the UCCJA is a finding entitled to review under the manifest error/clearly erroneous standard. Johnson v. Ellis, 621 So.2d 661, 667 (Miss.1993). “Subject matter jurisdiction deals with the power and authority of a court to consider a ease. Matter of Adoption of R.M.P.C., 512 So.2d 702, 706 (Miss.1987). As such, subject matter jurisdiction may not be waived and may be asserted at any stage of the proceeding or even collaterally. Id.” Hunt v. Hunt, 629 So.2d 548, 551 (Miss.1992).
The chancery court heard brief argument from counsel before finding that jurisdiction was proper in Mississippi and that the original custody decree rendered in Indiana was not entitled to full faith and credit and had been properly modified by the 1987 proceeding in Monroe County. As this case must be reversed on another ground, we will not substitute findings on jurisdiction for that of the chancery court. We do find that the question of jurisdiction should be revisited on remand, as there is the appearance in this record of a parent being rewarded for engaging in behavior condemned by this Court in Owens and Curtis.
II.
Adoption procedure in this state is controlled by Miss.Code Ann. § 93-17-1 to - 31. Nothing included in this chapter mandates that a guardian ad litem should be appointed for the child in question. In this case, adoption necessarily meant that Everett’s parental rights would be terminated. This would make § 93-15-107 applicable in this case. Section 93-15-107 provides:
In an action to terminate parental rights, the mother of the child, the legal father of the child, and the putative father of the child, when known, shall be made parties defendant. A guardian ad litem shall be appointed to protect the interest of the child in the termination of parental rights. A child may be made party plaintiff, and any agency holding custody of a minor shall act as party plaintiff.
(Emphasis added).
Appointment of a guardian ad litem is made mandatory by § 93-15-107. A guardian ad litem should be someone “who is unbiased and independent of the natural mother to insure protection for the child’s best interests.” Baker by Williams v. Williams, 503 So.2d 249, 253 (Miss.1987).
In Luttrell v. Kneisly, 427 So.2d 1384 (Miss.1983), the Kneislys attempted to terminate the parental rights of the Luttrells, so that they could adopt one of the Luttrells’ children. This Court reversed the chancery court’s decision to terminate parental rights and allow adoption because an improper burden of proof had been used. In addition, this Court noted § 93-15-107 and stated:
*581 The statute, as written, is clear and unambiguous. It unequivocally mandates that a guardian ad litem be appointed to protect the interest of a child in a termination of parental rights proceeding. The statute is clearly mandatory and not permissive.
Luttrell, 427 So.2d at 1388.
S.V.M.’s complaint for adoption specifically alleged that E.M.C. had abandoned S.M. under § 93-15-103 dealing with termination of parental rights of unfit parents. It makes little difference whether the parties referred to the proceeding as an adoption proceeding or a termination of parental rights proceeding; the two are not separable under these circumstances and the appointment of a guardian ad litem is mandatory. The chancery court erred in failing to appoint a guardian ad litem for S.M. in this case. The judgment of the chancery court is reversed and remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
DAN LEE, C.J., PRATHER and SULLIVAN, P.JJ., and BANKS and MeRAE, JJ., concur.
JAMES L. ROBERTS, Jr., J., dissents with separate written opinion joined by SMITH, J.
MILLS, J., not participating.