822 So.2d 1125 (2002)
Melissa WHITE, Appellant,
v.
Mark THOMPSON, Individually and as Next Friend of the Minor Child, Harley Alexus Thompson, Appellee.
No. 2000-CA-01485-COA.
Court of Appeals of Mississippi.
July 16, 2002.
*1126 Allison Pritchard Kizer, attorney for appellant.
Daniel J. Davis, Tupelo, Peter Thomas Martin, Aberdeen, attorney for appellee.
Before KING, P.J., BRIDGES, and CHANDLER, JJ.
BRIDGES, J., for the court.
¶ 1. Mark Thompson brought an action to appoint a guardian ad litem for, and gain primary custody of and support for his natural daughter Harley Alexus Thompson (Alex Thompson), a minor resident of Alabama, on June 26, 2000. Melissa White, Alex Thompson's natural mother, brought a counterclaim seeking adjudication of paternity, custody, and support. On July 5, the court held a temporary custody hearing and on July 12 awarded temporary custody of Alex Thompson to her father, Mark Thompson, and appointed a guardian ad litem for Alex, setting a trial date of July 19, 2000.
¶ 2. The permanent custody hearing began on July 19, and continued on July 28. On August 2, the guardian ad litem filed his recommendations with the court. On August 24, the chancellor entered her findings of fact and conclusions of law, and awarded permanent custody to Mark Thompson. White appealed in a timely fashion.
STATEMENT OF ISSUES
I. DID MISSISSIPPI HAVE JURISDICTION TO AWARD CUSTODY?
II. DID THE CHANCELLOR ERR AS A MATTER OF LAW IN APPLYING THE ALBRIGHT FACTORS *1127 TO MODIFY A WRITTEN CUSTODY AGREEMENT?
III. DID THE CHANCELLOR CLEARLY ERR WHEN APPLYING THE ALBRIGHT FACTORS?

FACTS
¶ 3. Mark Thompson is the natural father of Alex Thompson, the minor child, and Melissa White is her natural mother. Thompson and White never married, but have always lived nearby one another, enabling the child to spend a great deal of time with both parents. Thompson asserted his parental rights in an attempt to gain custody of his daughter when White and her present husband initiated divorce proceedings, and White's husband successfully gained temporary custody of White's children. White and her husband, Kevin, have since reconciled.

ANALYSIS

I. DID MISSISSIPPI HAVE JURISDICTION TO AWARD CUSTODY?
¶ 4. Although it is true that the subject matter jurisdiction of the court may be challenged at any time in the proceedings without prejudice, White here challenges both the subject matter and personal jurisdiction of the court over the minor Harley Alexus Thompson. See Hunt v. Hunt, 629 So.2d 548, 551 (Miss.1992) (overruled on other grounds by Powell v. Powell, 644 So.2d 269 (Miss.1994)). However, the core of Mississippi Code Annotated Section 93-23-5 (Rev.2000) is personal jurisdiction and venue; subject matter jurisdiction is assured in the first sentence of the statute, which limits the statute to the consideration of "[a] court of this state which is competent to decide child custody matters". Id (emphasis added). The chancery court has jurisdiction over all matters involving minors. Mississippi Constitution, art. 6, § 159. Thus, the Chancery Court of Monroe County had subject matter jurisdiction in this matter, provided that it appropriately asserted personal jurisdiction.
¶ 5. The question of the personal jurisdiction of the Monroe County Chancery Court is easily disposed of. This Court must consider the entire text of the appropriate statute, not merely that which favors the appellant. Personal jurisdiction is appropriate in the Chancery Court of Monroe County if "the child and his parents, or the child and at least one contestant, have a significant connection with the state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships." Miss.Code Ann. § 93-23-5(1)(b) (Rev.2000). Since this clause of the statute is bracketed by the word "or," it may by itself qualify as sufficient justification for the court to exercise personal jurisdiction over this matter:
Given that Mississippi was the child's birthplace and place of residence for a substantial part of her early life and was the father's place of residence, we are satisfied that a "significant connection" within the contemplation of the statute was shown.
Robinson v. Jackson, 794 So.2d 290, 292 (¶ 4) (Miss.2001).
¶ 6. The primary purpose of the Uniform Child Custody Jurisdiction Act (UCCJA) is to prevent parents from obtaining competing orders of custody. Curtis v. Curtis, 574 So.2d 24, 28 (Miss.1990). This fully comports with existing principles on the conflicts of laws and state sovereignty. Since Mississippi in no way intrudes on Alabama's sovereignty by acting within the limits of its long-arm statute to exert personal jurisdiction over an Alabama resident with strong ties to the state of Mississippi, we must conclude that the *1128 Chancery Court of Monroe County properly had personal jurisdiction over the parties to this action.

II. DID THE CHANCELLOR ERR AS A MATTER OF LAW IN APPLYING THE ALBRIGHT FACTORS TO MODIFY A WRITTEN CUSTODY AGREEMENT?
¶ 7. The Albright case remains the landmark case for resolving child custody in Mississippi:
We reaffirm the rule that the polestar consideration in child custody cases is the best interest and welfare of the child. The age of the child is subordinated to that rule and is but one factor to be considered. Age should carry no greater weight than other factors to be considered, such as: health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship.
Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).
¶ 8. White argues that this case is a modification of custody, and thus should not have proceeded to an Albright analysis before a determination of whether there had been a material change in circumstances adversely affecting the welfare of the child. Brocato v. Brocato, 731 So.2d 1138, 1141 (¶ 9) (Miss.1999). The facts showed that the custody agreement entered into between Thompson and White regarding Alex Thompson was merely notional; it was never endorsed by a court of law, and thus did not have binding legal force. The chancellor below recognized this fact, and determined that although Thompson and White had acted as if this were a binding agreement, the agreement by itself was not a custody order. Consequently, this case is the initial primary custody determination. At such a hearing, the consideration of the Albright factors is a necessity. Albright, 437 So.2d at 1005.
¶ 9. White argues that the notional agreement, which does not even meet the minimum standard of being a contract, should operate as a de facto court order of custody. She cites no authority for this proposition. Thus, White's appeal fails on this point.

III. DID THE CHANCELLOR CLEARLY ERR WHEN APPLYING THE ALBRIGHT FACTORS?
¶ 10. The appropriate standard of review for findings of fact, manifest error (abuse of discretion, etc.) on the part of the chancellor, is highly deferential. Brocato, 731 So.2d at 1140 (¶ 8). Since we have already held that the chancellor was correct to apply Albright to the case at hand, there remains only the question of whether the chancellor abused her discretion in analyzing these factors. The chancellor listed in detail her findings of fact on each Albright factor, and determined that although both White and Thompson were fit parents, Thompson should be the primary custodial guardian, since his home was more stable, and White testified under oath to inconsistent statements, bringing her moral fitness into doubt. Otherwise, the scales were nearly balanced, according to the chancellor.
*1129 ¶ 11. There is no question that White and her husband had instituted mutual divorce proceedings in Alabama. Also, there was some evidence of violence in the White household. The court weighed these factors, together with White's untruthful testimony under oath, and found that Thompson's household was a more appropriate home for Alex. White offers no new evidence, and does not attempt to explain how the chancellor could have erred; on its face, the chancellor's finding cleaves strongly to the evidence. Consequently, there is no support for White's assertion that the court erred in its consideration of the Albright factors.

CONCLUSION
¶ 12. White makes three assignments of error. She challenged the jurisdiction of the Monroe County Chancery Court on the basis that jurisdiction was more appropriate in Alabama. Although this may be the case, since White did not attempt to invoke Alabama's jurisdiction, and since Alex Thompson has significant contacts with the state of Mississippi, we find that jurisdiction was proper, and affirm. White also asserts that as she and Thompson had a prior non-binding agreement regarding the custody of Alex, Thompson's action amounts to a modification of an existing child custody order, and that the Albright factors should not be applied. Since the prior agreement is not a contract, nor a binding order of a court, we must here also affirm the chancellor.
¶ 13. Finally, White asserts that the chancellor clearly erred in its analysis of the Albright factors when it found that Alex would have a better home in Thompson's custody. Evidence of White's inability to testify consistently in the permanent custody hearing, as well as White's divorce action instituted shortly before this custody action supports the chancellor's finding, and absent any evidence supporting White's assignment of error, we affirm.
¶ 14. THE JUDGMENT OF THE CHANCERY COURT OF MONROE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.