794 So.2d 290 (2001)
Eshunna ROBINSON, Appellant
v.
Ellis C. JACKSON, Appellee.
No. 2000-CA-00211-COA.
Court of Appeals of Mississippi.
September 11, 2001.
*291 Paul McGerald Luckett, McComb, Attorney for Appellant.
Robert W. Byrd, McComb, Attorney for Appellee.
Before McMILLIN, C.J., BRIDGES, and MYERS, JJ.
McMILLIN, C.J., for the Court:
¶ 1. This Court is asked by the appellant, Eshunna Robinson, to set aside an order of custody relating to the minor child born to her and the child's natural father, Ellis Jackson. Jackson is the appellee. Robinson urges this Court to conclude that the Chancery Court of Pike County lacked jurisdiction to adjudicate the matter of the child's custody because Robinson and the child were residents of the State of Texas at the time this proceeding was initiated. Alternatively, she argues that the chancellor manifestly abused his discretion in awarding custody of the child to Jackson and that a reasoned analysis of the Albright factors would demonstrate her right to custody. We find no reversible error in the chancellor's resolution of this matter and, therefore, we affirm the judgment.
¶ 2. There is no substantial dispute as to the facts of the case. A female child named A.J. was born out of wedlock to Robinson and Jackson on July 9, 1994, at a time when both parties were seventeen years of age. The parties did not subsequently marry, nor was there any formal legal proceeding relating to custody and support of the child. Rather, for a number of years, the parties resolved such matters by mutual agreement. For some period, both parents continued to reside with their own parents, except for a brief stint while Jackson attended Mississippi State University. During that time, both parents had extensive contact with the child. Robinson and the child moved to Arizona in May 1996 to live with Robinson's aunt. Jackson married another woman in February 1997 and a child was subsequently born to that marriage. In May 1997, Jackson traveled to Arizona and brought A.J. back to Mississippi with him, where the child stayed until January 1998. At that point, Robinson came to Mississippi and took the child back to Arizona. In March 1999, Jackson once again went to Arizona and picked up the child. He testified that he did this at Robinson's request because Robinson was in the process of moving to Texas, and the parties initially agreed that the child would stay with him until August. However, Jackson elected to commence this proceeding in May 1999, seeking permanent paramount legal custody of the child.
¶ 3. The evidence showed that Jackson and his wife both worked as licensed nurses and had bought a home that was ample in size for them and two children. Robinson had, after moving to Arizona, given birth to another child out of wedlock. She had fluctuated between living with relatives and living in a rented apartment. Her work history consisted principally of employment in the fast food industry; however, she testified to finding work with *292 a telemarketing firm when she moved to Texas. Again, upon relocating to Texas, Robinson initially stayed with an aunt and, just prior to the hearing in this cause, began sharing living arrangements with a cousin in a house trailer owned by the cousin. Robinson testified that she was in the process of making arrangements to purchase her own house trailer, but that had not been accomplished by the hearing date.

I.

The Jurisdictional Question
¶ 4. After submitting to a hearing on the issue of custody of the child and after the chancellor had ruled on the merits, Robinson filed a motion to dismiss for lack of jurisdiction, claiming that both she and the child were nonresidents of the State of Mississippi. This raised a question that must be answered under the provisions of Mississippi's version of the Uniform Child Custody Jurisdiction Act. Miss. Code Ann. §§ 93-23-1 to 93-23-47 (Rev. 1994). Section 93-23-5 provides that a Mississippi court is competent to decide a child custody controversy when "[i]t is in the best interest of the child that a court of this state assume jurisdiction because ... the child and at least one (1) contestant, have a significant connection with the state, and ... there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships...." Miss.Code Ann. § 93-23-5(1)(b) (Rev. 1994). Given that Mississippi was the child's birthplace and place of residence for a substantial part of her early life and was the father's place of residence, we are satisfied that a "significant connection" within the contemplation of the statute was shown. Much of the evidence brought out at the hearing related directly to occurrences in Mississippi. Because the mother had recently abandoned Arizona as her place of residence and had only been a Texas resident for the shortest of time, none of which included the physical presence of the child in that state, it further appears that there was no more appropriate forum available to resolve the issue of custody.
¶ 5. We concede that subject matter jurisdiction may not be conferred by agreement of the parties. Hemsley v. Hemsley, 639 So.2d 909, 912 (Miss.1994). So, Robinson's belated raising of the issue does not affect the underlying merits of her claim of lack of jurisdiction. However, we conclude that the chancellor had authority to act under the statute and that, under these circumstances, he did not abuse his discretion in electing to exercise that authority to reach the merits, rather than ceding jurisdiction of the question to either Arizona or Texas. See Stowers v. Humphrey, 576 So.2d 138, 140 (Miss.1991).

II.

The Merits
¶ 6. The chancellor, after hearing all the evidence, entered detailed findings of fact and conclusions of law that specifically considered in some detail each of the elements directed by the Mississippi Supreme Court in the case of Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). In those findings, the chancellor concluded that, as to most of the factors, it was difficult to discover a marked advantage as to either of the contesting parents. However, on the issue of stability of the home environment, the chancellor placed some stress on the stable home situation of the child's father and the fact that the child had extended family in Pike County. The chancellor contrasted this stable situation with that of the child's mother, which included frequent moves, including extended *293 periods of living with relatives, and the fact that the mother had given birth to an additional child out of wedlock.
¶ 7. The fundamental consideration in a custody determination is always the best interest of the child, and not a means of punishing one parent or rewarding another. Albright, 437 So.2d at 1005. This appears to have been the guiding principle in the chancellor's determination insofar as the record reveals. In her brief, Robinson only points out that, as to her frequent moves, they were always in close proximity to a relative, thus giving the child some of the advantages inherent in being near extended family. She also argues that she should not be penalized for her move to Arizona because she only did it to escape abuse at the hands of the child's father. No evidence of such difficulties was offered at trial other than Robinson's own testimony and the chancellor made no findings of fact that such abuse occurred. Finally, Robinson belittles the advantages of stable employment and home ownership, arguing that they do little to demonstrate parenting skills and unfairly penalize her for her lack of wealth.
¶ 8. We find none of these arguments persuasive on the proposition that the chancellor abused his discretion in deciding custody. The chancellor necessarily has substantial discretion in such matters and must often make difficult decisions when he is satisfied that both parents are loving and genuinely concerned with the child's well-being. Once the chancellor has considered in depth the relevant factors as dictated by the Mississippi Supreme Court in the Albright decision, this Court is without authority to disturb his conclusions unless there is some reasoned basis to conclude that the chancellor has abused that discretion. We can find no such abuse in this case and our obligation is, therefore, to affirm.
¶ 9. THE JUDGMENT OF THE CHANCERY COURT OF PIKE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER, JJ., CONCUR. KING, P.J., CONCURS IN RESULT ONLY. BRANTLEY, J., NOT PARTICIPATING.